414 A.2d 676

**CITY OF BEAVER FALLS**

v.

**Newton M. SAMUELS, Appellant.**

Superior Court of Pennsylvania.

Argued April 11, 1979.

Filed Nov. 16, 1979.

J. Lauson Cashdollar, Beaver, for appellant.

Edward S. Young, Beaver Falls, for appellee.

Before PRICE, HESTER and MONTGOMERY, JJ.

HESTER, Judge:

Appellee, the City of Beaver Falls (a third class city), instituted the present equity action against appellant Newton M. Samuels, the owner of a number of buildings located in Beaver Falls. The complaint alleged that these structures were in such a state of disrepair and deterioration as to constitute public nuisances and were a threat to the public health, safety, and welfare of the citizens of Beaver Falls. The City requested the court to either require appellant to repair and restore the premises or to demolish them altogether. Prior to the beginning of testimony, the court took a view of the twelve buildings in question, accompanied by appellant and his attorney, the city solicitor, public health

officer, fire chief, and engineer. Following the view, the City offered testimony and a large number of photographs of the premises, while appellant presented no testimony. At the close of evidence, the court filed an adjudication and decree nisi, ordering some of the buildings demolished and directing that the remaining be repaired and cleaned out. Appellant's exceptions were dismissed by the court *en banc* and an order was entered affirming the decree nisi. This appeal followed.[1]

Both below and on appeal, appellant has contended that the City is precluded from proceeding by a common law equity action since it has available an adequate remedy at law. The Third Class City Code, Act of June 23, 1931, P.L. 1932; June 28, 1951, P.L. 662 (53 P.S. § 35101 et seq.) provides three alternate statutory avenues by which the municipality may proceed to abate a nuisance. The first (53 P.S. §§ 37320–37324) authorizes the board of health to determine that a nuisance, as defined, does exist and to order it removed, abated, suspended, altered, or otherwise prevented or avoided. Following notice and hearing, the aggrieved party may appeal to the court. The second avenue of relief (53 P.S. §§ 39140–39143) empowers the city council to permit the mayor to present a petition to the court declaring property to be a public nuisance. The court may then appoint a board of viewers whose decision, if adverse to the lot owner, may be appealed to the court of common pleas. Under the third mode of proceeding, (53 P.S. § 37403(16)), the city council may, by ordinance, prohibit nuisances and require the owner to remove the same from his property. The council is authorized to enforce its nuisance ordinance in a court of equity.

None of these statutory remedies were pursued by the City in the instant case.[2] Instead, appellee argues that

1. This is not the first time appellant and Beaver Falls have locked horns over the use of his property. See, *Samuels v. City of Beaver Falls*, 5 D & C 2d 500 (1953).

2. The City appears to argue that 53 P.S. § 37403(16), discussed above and cited in the complaint, authorizes the instant common law equity

these procedures are not exclusive and that a common law equity action is not barred by the Third Class City Code. We are compelled to disagree. While it is true that equity may normally be invoked by a municipality to restrain a public nuisance, *Commonwealth v. Glen Alden Corp.*, 418 Pa. 57, 210 A.2d 256 (1965); 6 McQuillin, Municipal Corporations (3rd Ed.) § 24.73, the cases are also clear that equity's inquiry will be barred where the Legislature has provided a statutory procedure to resolve the controversy. *Glen Alden*, supra; *Borough of Collegeville v. Philadelphia Suburban Water Co.*, 377 Pa. 636, 105 A.2d 722 (1954); Act of November 25, 1970, P.L. 707, No. 230, added December 6, 1972, P.L. 1339, No. 290, § 3 (1 Pa.C.S.A. § 1504; formerly 46 P.S. § 156) (statutory remedy preferred over common law). Thus, in *Glen Alden*, the Air Pollution Control Act was held to oust equitable jurisdiction to inquire into a public nuisance since the Act provided a full and complete procedure to resolve the dispute. Similarly, in *Collegeville*, two statutes authorized sufficient administrative procedures to abate a nuisance as to preclude a suit in equity to enjoin the nuisance. These cases are, of course, merely specific applications of the general rule that equity will not inquire into a controversy where to do so would obviate a constitutionally valid statutory exclusive procedure enacted by the legislature. *Lilian v. Commonwealth*, 467 Pa. 15, 354 A.2d 250 (1976); *W. Homestead v. Allegheny County Board of School Directors*, 440 Pa. 113, 269 A.2d 904 (1970); *Calabrese v.*

action. However, that section, read with the preamble, makes it clear that an equity action may only be brought to enforce a nuisance *ordinance* previously enacted by the city council. The City does not plead or aver the existence of any ordinance defining public nuisances as the basis for its suit. See, e. g. *Groff v. Borough of Sellersville*, 12 Pa.Cmwlth. 315, 314 A.2d 328 (1974) where, under the Borough Code, Act of February 1, 1966, P.L. (1965) 1656, the municipality was authorized to bring a suit in equity against a land owner to enforce a borough *ordinance* prohibiting nuisances. The section in question there, 53 P.S. § 46202(5), is the parallel to § 37403(16) of the Third Class City Code and only contemplates an equity action in conjunction with an ordinance. See also *City of New Castle v. DeRosa*, 4 D & C 3d 319 (1978). Since there was no city ordinance cited instantly, an equity suit was not authorized by the statute.

*Collier Twp. Municipal Auth.*, 430 Pa. 289, 240 A.2d 544 (1968); *Emerson-Harrell Bar Corp., Inc., v. Commonwealth*, 33 Pa.Cmwlth. 578, 382 A.2d 500 (1978); *Tornetta v. Plymouth Twp. Municipal Auth.*, 31 Pa.Cmwlth. 353, 375 A.2d 1381 (1977); *City of Philadelphia v. Franklin Smelting and Refining Co.*, 3 Pa.Cmwlth. 626, 284 A.2d 339 (1971). "The manner or mode of destruction or removal of property, in the municipal abatement of a public nuisance, must substantially observe the governing requirements of statute, charter, or ordinance." 6 McQuillin, supra, § 24.75.[3]

■ The only exception to this general mandate is where the statutory procedure is not adequate, complete, or effective, see, e. g., *Rankin v. Chester-Upland School District*, 11 Pa.Cmwlth. 232, 312 A.2d 605 (1973), or where its pursuit might work irreparable harm. *Duquesne Light Co., v. Twp. of Upper St. Clair*, 377 Pa. 323, 105 A.2d 287 (1954); *Wood v. Goldvarg*, 365 Pa. 92, 74 A.2d 100 (1950). Appellee does not advance any of these arguments as justification for the instant equity proceeding. The court below found the structures in question constitute health and fire hazards, are structurally unsound, are open and accessible to animals and vermin, that garbage, rubbish, and junk have accumulated therein, and are, in general, a danger to the health, safety, and welfare of the citizens. These are precisely the type of public nuisances at which the Code's provisions are aimed. Moreover, our review of the three statutory forms of redress provided by the Third Class City persuades us the legislature intended to treat thoroughly the matter of abating public nuisances. Each avenue is designed to be flexible, but is predicated upon procedural requisites such as use of the board of health, a board of viewers, or enforcement of an

---

**3.** This is not to say that the legislative scheme may not itself embrace common law equitable remedies. In such an instance, equity jurisdiction is preserved. See, e. g., *Borough of Brookhaven v. American Rendering, Inc.*, 434 Pa. 290, 256 A.2d 626 (1969) (Air Pollution Control Act, as amended); *Commonwealth ex rel. Shumaker v. New York & Pennsylvania Co.*, 367 Pa. 40, 79 A.2d 439 (1951) (Pure Streams Act).

ordinance defining and prohibiting nuisances.[4] An ordinary equity action, such as we have instantly, is simply not contemplated under any of the statutory provisions.[5]

Since the City had an adequate statutory remedy, and offers no justification for bypassing the legislative scheme, we are constrained to conclude the equity side of the court could not entertain the suit.

Order and decree reversed. Complaint dismissed.

4. We reject the City's contention that the statutory scheme is not the exclusive method for abating a nuisance in a third class city. Simply because the legislature has provided three alternate avenues of pursuing redress does not make them any less "exclusive" of other possible remedies. The Code's procedures are "exclusive" in the sense that the legislature has decided a nuisance shall only be abated through one of the avenues provided *and through no other.* See, e. g., *Commonwealth Dept. of Environmental Resources v. Leechburg Mining Co.,* 9 Pa.Cmwlth. 297, 305 A.2d 764 (1973) (Legislature affords DER multiple remedies in enforcement of environmental statutes, including equity, but only because statute has preserved same). Under the city's construction, should the legislature provide more than one form of relief, those forms cease to become "exclusive", allowing any and all common law remedies to be invoked. We do not believe the legislature intended such an "absurd or unreasonable" result. 1 Pa.C.S.A. § 1922(1).

5. Both the City and the court below relied heavily upon *City of Pittston v. Pittston-Luzerne Corp.,* 47 Luz. 122 (1957), where the court approved a third class city's common law equity action to abate a public nuisance. However, the court seemed to be applying the principle that the statutory remedy was not adequate to deal with the fire hazards there involved. In any event, we do not deem the short opinion in *Pittston* to be controlling herein.