552 A.2d 741
Jonathan G. King and Sarah S. King, Appellants *v.*
Township of Leacock, Appellee.

Argued November 3, 1988, before Judges BARRY, COLINS and McGINLEY, sitting as a panel of three.

*Jeffrey A. Ernico, Tive, Hetrick & Pierce, P.C.*, for appellants.

*Frank J. Vargish, III, Blakinger, Byler & Thomas, P.C.*, for appellee.

OPINION BY JUDGE COLINS, January 10, 1989:

This case involves the determination of whether the demolition of Jonathan and Sarah King's (appellants) property is the proper means of abating a public nui-

sance. Appellants' property is located at 188 Maple Street, Gordonville, Pennsylvania, and consists of an uninhabited, two-story frame building on a lot of approximately 13,000 square feet. On May 6, 1987, the Township of Leacock (Township) filed a complaint against appellants charging that their property constituted a public nuisance in violation of Section 2 of the Township's nuisance ordinance.[1] Appellants failed to answer the Township's complaint, however, and a Judgment of Default was entered against appellants on June 18, 1987, pursuant to Pa. R.C.P. 1511(a).

On August 5, 1987, a hearing was held for the purpose of framing a final decree, pursuant to Pa. R.C.P. 1511(b). At this hearing, testimony was presented concerning complaints which the Township had received over several years regarding the dilapidated condition of appellants' premises. The testimony presented by the

---

[1] The Township's ordinance provides in pertinent part:

No person shall continue, maintain, establish or carry on any of the following prohibited acts or activities on any public or private property... if the same are determined to be and constitute nuisances in fact:

...

(b) The storage, accumulation or depositing of any abandoned or used building materials of any kind;

...

(d) The maintenance of any dangerous structure, including buildings or parts of buildings in a state of dilapidation or disrepair;

(e) ... [P]ermitting... the growth of any grass or weeds... to exceed a height of six (6) inches... ;

(f) Any use of land or a structure which is unreasonable or unlawful and causes injury, damage or substantial discomfort to the residents of the township in the legitimate enjoyment of their reasonable rights.

This ordinance was enacted pursuant to Section 702 of The Second Class Township Code, Act of May 1, 1933, P.L. 103, as amended, 53 P.S. §65712.

Township officials, who conducted an inspection of appellants' property, revealed that portions of the building were boarded-up because it constituted a safety hazard to children, upstairs portions of the building were rotted out, the premises lacked water and a functioning sewer system, the plumbing fixtures were rusted through, the doors and windows of the building were largely missing, there was evidence of rats on the premises, and the yard was overgrown with weeds. The Township also presented an expert at the hearing who testified that the cost to remodel appellants' building would be approximately $70,000.00. The expert testified that this cost was equivalent to actually rebuilding a whole new structure on the property. Appellant, Jonathan King, also testified at this hearing. Mr. King testified that he was in bankruptcy and, as of the day of the hearing, he had not begun any structural repairs to his building, nor had he obtained any written estimates concerning the cost of remodeling.

Following this hearing, the Chancellor viewed appellants' premises. As a result of this viewing, an interim decree was entered on August 11, 1987, which ordered appellants to repair their property and to bring it "up to the standard of the general neighborhood" within a 4-month period.[2]

Upon motion by appellee, a supplemental hearing was held on January 20, 1988. Testimony was presented at this hearing which detailed the repairs, which to that point, had been made to appellants' property. According to this testimony, the weeds and vegetation in the yard were cut, the exterior of the property was painted, the broken windows were replaced, as were the exterior wooden stairs to the second floor and portions of the

---

[2] As will be discussed *infra*, the Township does not have a building code from which the structural soundness of the building can be judged.

roof, some work was done to the foundation, and the holes in the floors and ceilings were repaired. The Township's expert, when asked his opinion of the cost to complete the remaining repairs, estimated $40,000.00. Following this hearing, the Chancellor again inspected the property and, thereafter, issued a final decree.

The final decree, which appellants now appeal, was entered April 6, 1988. This decree enjoined appellants from violating the Township's nuisance ordinance and ordered them to remove the building on or before May 22, 1988. Appellants' Application for Stay Pending Disposition of the appeal to this Court was granted on May 18, 1988.

On appeal, appellants contend that the Chancellor's decision that their property constitutes a public nuisance is not supported by substantial evidence. Appellants also argue that demolition of their house is not the appropriate remedy in this instance, since it goes beyond merely abating the nuisance.

Our scope of review in an equity action is limited to a determination of whether the Chancellor's findings of fact are supported by substantial evidence, whether an error of law has been made, or whether the Chancellor abused his discretion. *Londonderry Township v. Geyer,* 113 Pa. Commonwealth Ct. 176, 537 A.2d 377 (1988). The presence of evidence contrary to the Chancellor's findings does not make them unsupported since issues of credibility and evidentiary weight are within the exclusive province of the Chancellor. *Id.*

A nuisance has been defined as " ' "such a use of property or such a course of conduct as, irrespective of actual trespass against others or of malicious or actual criminal intent, transgresses the just restrictions upon use or conduct which the proximity of other persons or property in civilized communities imposes upon what would otherwise be rightful freedom." ' " *Groff v. Bor-*

*ough of Sellersville,* 12 Pa. Commonwealth Ct. 315, 318, 314 A.2d 328, 330 (1974). A *public* nuisance, " 'is an inconvenience or troublesome offense that annoys the whole community in general, and not merely some particular person, and produces no greater injury to one person than to another....' " *Id.*

Rule 1511 of the Pa. Rules of Civil Procedure provides in relevant part:

(a) The prothonotary, on praecipe of the plaintiff, shall enter a judgment by default against the defendant for failure to plead within the required time to a complaint which contains a notice to defend. In all other cases of default or of admission the judgment shall be entered by the court.

...

(b) In all cases, the court shall enter an appropriate final decree upon the judgment of default or admission and may take testimony to assist in its adjudication and in framing the decree.

In the instant matter, the order of June 18, 1987, declaring appellants' property a public nuisance was entered as a default judgment pursuant to Pa. R.C.P. 1511(a). As a result, the court was required to treat as true averments of fact contained in the Township's complaint. Pa. R.C.P. 1029(b). *See Miernicki v. Seltzer,* 312 Pa. Superior Ct. 166, 458 A.2d 566 (1983), *aff'd,* 505 Pa. 323, 479 A.2d 483 (1984). Accordingly, pursuant to Pa. R.C.P. 1511(b), the hearing held on August 5, 1987, was held *solely* to assist the court in framing its decree. For that purpose, the Township presented testimony, as well as photographs, to establish the dilapidated condition of appellants' property. In addition, the Chancellor actually viewed the premises. We conclude, therefore, that the record contains substantial evidence to support

the Chancellor's determination that appellants' property constituted a public nuisance which should be abated.

Turning to the second issue, we must decide whether demolition of appellants' building is the proper remedy in this instance. It is well established that when a public nuisance in fact exists, the court should not devise a remedy harsher than the minimum necessary to properly abate the nuisance. *Groff,* 12 Pa. Commonwealth Ct. at 321, 314 A.2d at 332. In addition, the remedy selected to abate the nuisance should not be punitive; rather, it should be shaped to correspond to the nature and extent of the nuisance. 58 Am. Jur. 2d Nuisances §§142 and 162 (1971); 42 Am. Jur. 2d Injunctions §§56 and 6 (1971).

What we find most troubling in the case *sub judice* is that demolition of appellants' building was ordered without the Chancellor having specifically found that it constituted a public danger, *i.e.,* was in imminent danger of collapse. While it is true that the Township has within its police power the authority to demolish a structure which poses a danger to the health, safety or welfare of the public, to so " 'interpos[e] [this] authority in behalf of the public, it must appear, first, that the interests of the public generally ... require such interference; and, second, that the means *are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals.' " Sobocinski v. City of Williamsport,* 13 Pa. Commonwealth Ct. 425, 429, 319 A.2d 697, 700 (1974) (quoting *Lawton v. Steele,* 152 U.S. 133, 137 (1894)) (emphasis added).

There are a variety of remedies to which the Township may resort in abating the nuisance at issue without actually demolishing appellants' uninhabited property. For example, if the electrical wiring in the structure is substandard, the Township can turn off the flow of electricity from its source until the wiring is satisfactory; if

the building is open, the Township can close it at the appellants' expense; if the floors are unsound, the Township can forbid tenancy until the floors are sound. In addition, more traditional remedies such as contempt and damages are available to the Township which will likewise assure abatement of the nuisance. The radical remedy of demolition should be used only when there exists no other practical alternative.

We must emphasize that an order of demolition, such as that entered in the instant matter, is a taking pursuant to the police power, without compensation. As such, any order requiring confiscation and destruction of privately-held property must be subject to strict scrutiny and, in no instance, may such action be taken unless it is necessary for the protection of the public health, welfare, and safety. *See Lawton; White's Appeal,* 287 Pa. 259, 134 A. 409 (1926).

Accordingly, we do not believe that sufficient factual findings were made by the Chancellor, such that the record will support an order of demolition. The record reveals that appellants have already made substantial repairs to the building. Thus, the conditions of the nuisance have changed considerably since August 5, 1987, and these changes should have been considered by the Chancellor in rendering the final order. Appellants have made a good faith effort to repair their property and they should be given additional time to complete the repairs.

Another troubling aspect of the Chancellor's final order is the vague standard used to determine whether appellants complied with the August 11, 1987, interim decree. Appellants were ordered, *inter alia,* to bring their house "up to the standard of the general neighborhood." Having failed to meet the "standard of the general neighborhood," appellants' house was ordered demolished. We find this remedy rather drastic in light of the

fact that the Township has no building code from which to determine the structural soundness of appellants' house. It appears that simply because appellants' house is not aesthetically pleasing to the residents of Leacock Township, the Township seeks to demolish the structure. Demolition of a structure, even if it constitutes an eyesore to its surrounding neighborhood, is improper if it is structurally safe and poses no danger to the public. Accordingly, we are not prepared to sanction such severe action without specific factual findings by the Chancellor, supported by evidence of record, which indicates that appellants' building constitutes a public danger requiring demolition.

Based upon the foregoing discussion, we affirm the Chancellor's order to the extent that it declares appellants' property a public nuisance, but we vacate the Chancellor's order and remand the record for the purpose of making specific factual findings concerning the safety of appellants' building and devising a remedy appropriate to those findings.

## ORDER

AND NOW, this 10th day of January, 1989 the final decree of the Chancellor in the above-captioned matter is hereby vacated. The matter is remanded to the Chancellor for additional findings of fact consistent with the foregoing opinion.

If the Chancellor deems it necessary to conduct additional evidentiary hearings, he may do so at his discretion.

Jurisdiction relinquished.