## City of Lancaster v. Germer

*William C. Crosswell,* for plaintiff.
*Stephen W. Cody,* for defendant.

FARINA, *J.,* October 25, 1989 — Before the court are defendant's exceptions to a June 9, 1989 adjudication and decree nisi which ordered the humane destruction of defendant's dog.[*]

At trial the Chancellor found the following facts. Defendant is the owner of an American pit bull terrier registered under the name "Red and White Macke Attack," which defendant kept at his residence in the City of Lancaster. The dog escaped or was permitted to run loose on a number of occasions. Five written warnings concerning the dog running loose were issued by Lancaster's Dog Law enforcement officer to defendant or a member of his residence. These warnings were dated September 29, 1987, January 29, 1988, August 31, 1988, February 7, 1989 and February 13, 1989. Neither defendant nor any member of his household ever responded to the warnings.

On March 10, 1989, defendant's dog attacked Kathleen Antol as she and her husband were walking. The attack was unprovoked and came without warning. Mrs. Antol escaped injury because defendant's dog had bitten her gloved hand, and she was able to free her hand from the glove and flee. Following the attack on Mrs. Antol, defendant's dog attacked a leashed dog as it was being walked by its

---

[*] Pa.R.C.P. 1518, which authorized the filing of exceptions following an equity trial, was rescinded effective January 1, 1984. Post-trial relief procedure in both actions at law and in equity is governed by Pa.R.C.P. 227.1 which provides for the filing of motions for post-trial relief. We will therefore treat defendant's exceptions as a motion for post-trial relief.

owners, the Hermans. The attack on the Herman dog stopped only after defendant's dog was repeatedly kicked and stabbed several times with a pocket knife. In addition to the March 10, 1989 attacks, defendant's pit bull has, on various occasions, attacked several other dogs and killed two cats and a squirrel.

Following the attack on Kathleen Antol, the City of Lancaster, plaintiff, filed a complaint in equity against defendant, seeking a preliminary injunction to seize defendant's dog and a final injunction ordering its humane destruction. By order dated March 17, 1989, an ex parte injunction was entered directing seizure of defendant's dog and its confinement at the Humane League of Lancaster. A preliminary injunction confirming the earlier order followed. A final hearing was held on May 19, 1989 and May 23, 1989. On June 9, 1989 the Chancellor issued his adjudication and decree nisi with findings of fact and conclusions of law and ordered humane destruction of defendant's dog. The cost of maintenance of the dog at the Humane League during the pendency of the proceeding was imposed on defendant, as were the costs of the proceedings. In addition, the Chancellor fined defendant for past violations of city ordinances regulating the ownership and maintenance of dogs. On June 19, 1989, defendant filed exceptions to the Chancellor's adjudication and decree nisi. Briefs were submitted by the parties, and oral argument was held on August 16, 1989. For the following reasons defendant's exceptions, which we have considered as a motion for post-trial relief, are dismissed.

Defendant's first allegation of error is that the Chancellor abused his discretion in permitting Thomas Watts, Dog Law enforcement officer for the City of Lancaster, to testify as an expert witness in

regard to the characteristics of the breed of dogs known as American pit bull terriers. The testimony at trial established that Watts has been employed as Dog Law enforcement officer for over six years and as part of his job he has handled over 1,100 dogs per year. Although Watts has no formal degrees he is well read in his field, and through his job, has come into contact with thousands of dogs including pit bull terriers. Defendant argues that Watts' personal experience falls short of what is required of an expert. We disagree. In Pennsylvania the standard of qualification for an expert witness is quite liberal: "A witness will be qualified as an expert if he or she has any reasonable pretension to specialized knowledge on the subject under investigation." *Yoho v. Stack,* 373 Pa. Super. 77, 83, 540 A.2d 307, 310 (1988). We do not believe that Watts' lack of formal education or training is sufficient to render him unqualified as an expert. There was no error in our finding that Watts' on-the-job acquired knowledge and experience was sufficient to qualify him as an expert.

Defendant has next alleged that a number of the Chancellor's findings of fact are not supported of record by substantial evidence. In support of this contention, defendant cites the testimony of defense witnesses which conflicts with the Chancellor's factual findings. Most of this testimony was at odds with the testimony of plaintiff's witnesses, however, and the Chancellor simply made a determination that the testimony of plaintiff's witnesses was, in these instances, more credible than the testimony presented by defendant's witnesses. "It is well established that the finder of fact is free to believe all, part, or none of the evidence," *Commonwealth v. Carter,* 377 Pa. Super. 93, 112, 546 A.2d 1173, 1182 (1988). Even where defense testimony was not contradicted by plaintiff, the credibility of

defendant's witnesses was still at issue. *Hill v. Reynolds,* 384 Pa. Super. 34, 557 A.2d 759 (1989). The Chancellor as fact finder was therefore free to make findings of fact which contradicted the testimony of defense witnesses.

Defendant's third contention is that plaintiff does not have standing to bring the instant action since the dog has been removed from the City of Lancaster and allegedly will not return. Defendant has moved outside the city and has proposed that his father, who resides in Conestoga, take over ownership of the dog. It is well established that in order to have standing, "one must plead facts which establish a direct, immediate and substantial injury." *Paratransit Assoc. of Delaware Valley Inc. v. Yerusalim,* 114 Pa. Commw. 279, 538 A.2d 651 (1988). The instant action was commenced while defendant resided within the city and defendant still resided within the city when the special injunction was granted. These facts, together with the possibility that the dog might someday be brought to the City of Lancaster, establish standing because the pit bull's attacks are capable of repetition yet evade review. See *Reichly v. North Penn School District,* 113 Pa. Commw. 528, 537 A.2d 391 (1988).

Defendant next claims that conclusions of law numbers (3), (6), (7) and (9) are not supported by substantial evidence. Conclusions of law (3) and (6) find that defendant's dog has a vicious disposition and is capable of seriously injuring or killing humans. Defendant asserts that the single incident where the dog bit Mrs. Antol does not indicate the dog has a vicious disposition. Defendant claims that the Chancellor's findings are based on the testimony of Dog Law enforcement officer Watts who demonstrated obvious prejudice against the breed of dogs known as pit bulls. We disagree.

Various witnesses testified with regard to the dog's vicious disposition, including Mrs. Antol's husband, as well as Mr. Herman, Mr. Shelly and Mrs. Mumma, persons whose dogs had been attacked by defendant's pit bull. Indeed, defendant's own father stated at trial that if the dog were to go after someone, that person would not be able to escape. Conclusion of law (7) finds that the pit bull either intentionally or through the inability of someone to confine him, had been permitted to run at large. Despite defendant's arguments to the contrary, this conclusion was clearly supported both by the testimony of a neighbor who testified to watching the dog leave the property on a number of occasions, as well as by the testimony of defense witness Mr. Ewing who discussed how the dog managed to escape when defendant's gate was opened to admit a visitor. Conclusion of law (9) finds that defendant failed to complete an animal bite report after his dog's attack on Kathleen Antol as he was obligated to do under section 715.14(a)(1) of the Codified Ordinances of the City of Lancaster. Defendant claims that it was the duty of the Willow Run Veterinary Clinic who held the dog in quarantine to file the report, and alleges the clinic did so. We disagree. The document defendant claims is the dog bite report was in fact completed by personnel at Saint Joseph's Hospital and concerns only the hospital's treatment of Mrs. Antol's injuries. Additionally, we note that the statute requires that the "owner or custodian" of the animal complete the report.

Defendant's fifth contention is that his maintenance of the dog does not constitute a nuisance. He alleges that a single incident of the dog biting a person does not rise to the level of a nuisance. Defendant ignores the fact that the pit bull has attacked a number of other dogs and killed two cats.

A pattern of repeated attacks by the dog was demonstrated at trial, and it was also demonstrated that defendant was unable or unwilling to prevent or even acknowledge this behavior. We therefore find that because the pit bull's propensity to violence may affect any member of the community, defendant's maintenance of the dog constitutes a public nuisance.

Defendant next claims that plaintiff has an adequate remedy at law, and that the Dog Law, 3 P.S. §459-101 et seq., controls the instant action. The Dog Law provides an avenue by which persons attacked by a dog may file a complaint and seek an order directing that the dog be confined. The dog owner may be required to post a bond to insure payment of damages for injuries the dog might inflict. The Dog Law was not meant to be the exclusive law regulating dogs. In *Baehr v. Commonwealth ex rel. Lower Merion Township,* 51 Pa. Commw. 241, 244, 414 A.2d 415, 416 (1980), the Commonwealth Court characterized the field of dog regulation as one which particularly "encourages regulation adapted to local conditions." Not only is the Dog Law not the exclusive remedy, it is an inadequate remedy as well. In the instant case defendant has already demonstrated his inability to keep his dog confined. Additionally, the potential injury to members of the public which may result from the running at large of defendant's pit bull constitutes irreparable harm. An award of damages is inadequate compensation for disfigurement or death as a result of an attack by a dog which has previously proved itself to be dangerous.

Defendant's final contention is that destruction of the dog is not the least drastic remedy available to the court. Under the law an injunction must be carefully tailored to remedy only the specific harm

shown and be no broader than needed to prevent reoccurrence of the harm. See *Northeast Women's Center Inc. v. McMonagle,* 665 F.Supp. 1147 (E.D. Pa. 1987); *King v. Township of Leacock,* 122 Pa. Commw. 532, 552 A.2d 741 (1989). Defendant argues that the remedy imposed in the decree nisi is too severe, and claims that the public can be adequately protected if ownership of his pit bull is transferred to defendant's father, a more responsible person, under conditions of close and strict confinement. While conceivably the dog could be confined as wild and dangerous animals are in public and private zoos, we are not satisfied that the conditions of confinement proposed by defendant's father are adequate. To simply lessen the probability of the dog inflicting grave injury is just not enough. Experience with defendant's pit bull demonstrates that when he attacks an animal he will try to kill it; when he attacks a man we have no reason to doubt he may attempt the same. If the attack were on a defenseless child, death could be a likely result. Under the circumstances we regrettably conclude the only appropriate remedy to ensure public safety is the humane destruction of defendant's dog.

Accordingly, we enter the following

## FINAL DECREE

And now, August 25, 1989, upon consideration of defendant's exceptions to the Chancellor's adjudication and decree nisi, considered by the court as post-trial motions, the motions are denied and the decree nisi is hereby entered as the final decree.