**Helen STACEY**

v.

**CITY OF HERMITAGE BOARD OF APPEALS.**

**Helen Stacey**

v.

**City of Hermitage and City of Hermitage Board of Appeals.**

**Appeal of Helen Stacey.**

Commonwealth Court of Pennsylvania.

Argued Oct. 9, 2001.

Decided Nov. 8, 2001.

Reconsideration Denied Jan. 28, 2002.

Armand R. Cingolani, III, Butler, for appellant.

David A. Ristvey, Hermitage, for appellee City of Hermitage Board of Appeals.

H. William White, III, Sharon, for appellee City of Hermitage.

Before PELLEGRINI, Judge, LEADBETTER, Judge (P.), and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

■ Helen Stacey (Stacey) appeals from the November 6, 2000 order of the Court of Common Pleas of Mercer County (trial court) that denied her request for a permanent injunction. Stacey sought to enjoin the City of Hermitage (City) from demolishing her former residence at 1560 East State Street, Hermitage. We affirm.[1]

In 1997, the City informed Stacey that her property was in violation of the City's property maintenance code and that, therefore, it was proceeding to have her property declared a public nuisance. In 1998, the City adopted a new property maintenance code, which mirrors the Building Officials and Code Administrators National Property Maintenance Code (BOCA Code). Consequently, the City notified Stacey that her property was in violation of the BOCA Code and that any corrective action had to be completed within thirty days.

Stacey appealed to the City of Hermitage Board of Appeals (Board). The Board held a hearing on April 15, 1999 and, upon conclusion, determined that Stacey's structure was an attractive nuisance, unsafe for human habitation, littered with rubbish or garbage and uncontrolled weed growth, a fire hazard and in danger of collapse.

Stacey appealed. By order dated April 19, 2000, the trial court affirmed the Board's determination in all respects except one. It reversed the Board's determination that Stacey's property constituted a fire hazard. No appeal was taken from that order.

Thereafter, the City began proceedings to have the structure demolished. On June 1, 2000, the City informed Stacey that she had the right to cure the structure's problems within thirty days and that

1. On review, we are limited to determining whether the trial court abused its discretion or committed an error of law. *Licensed Beverage Ass'n of Philadelphia v. Bd. of Educ. of the Sch. Dist. of Philadelphia,* 669 A.2d 447 (Pa.Cmwlth.1995).

if she failed to do so, demolition would follow. On June 30, 2000, Stacey's son, Raymond, requested an extension of time in which to complete the repairs. By that time, Raymond had distributed two loads of sand into the basement.[2] The City denied Raymond's request for an extension of time.

On August 30, 2000, Stacey filed a petition for special relief in the nature of a temporary injunction against the Board and the City. In her petition, Stacey alleged that she was arbitrarily denied a hearing before the Board on the issue of demolition, that she was not notified of her right to appeal the City's decision to demolish her residence, and that the structure had value and could be restored.[3]

The trial court issued an order granting the temporary injunction and set a permanent injunction hearing for September 5, 2000. At the conclusion of the hearing, the trial court determined that 1) it was bound by its April 19, 2000 order concluding that the structure was unsafe, 2) it would be unreasonable to repair the structure where it would have to be taken down to the studs and 3), Stacey was not entitled to a hearing before the Board because no timely appeal was filed. Accordingly, the trial court entered a decree nisi vacating the temporary injunction.

Stacey took exceptions to the decree nisi. On November 6, 2000, the trial court entered an order affirming its prior decree. The following day, November 7, 2000, the City demolished the structure. This appeal followed.

Section 110.1 of the BOCA Code provides that

[t]he code official shall order the owner of any premises upon which is located any structure, which in the code official's judgment is so old, dilapidated or has become so out of repair as to be dangerous, unsafe, unsanitary or otherwise unfit for human habitation or occupancy, and such that it is unreasonable to repair the structure, to raze and remove such structure; or if such structure is capable of being made safe by repairs, to repair and make safe and sanitary or to raze and remove at the owner's option; or where there has been a cessation of normal construction of any structure for a period of more than two years, to raze and remove such structure.

(Reproduced Record "R.R." 28a) (emphasis deleted).

■ Stacey cannot now argue that the Board erred in concluding that her structure was an attractive nuisance, unsafe for human habitation, littered with rubbish or garbage and uncontrolled weed growth and in danger of collapse. The April 19, 2000 trial court order affirmed the Board's determination and no appeal was taken. Stacey's failure to appeal the trial court's order precludes her from challenging that determination in this proceeding. *See generally First Nat'l Bank v. Commonwealth,* 520 Pa. 244, 553 A.2d 937 (1989) (Commonwealth's failure to appeal tax resettlement order precluded consideration of whether bank's right to refund was limited to pro rata formulation in subsequent proceeding involving resettlement of bank's single excise tax).

Thus, as the trial court noted, the only issue at the September 5, 2000 injunction hearing was whether demolition of the

---

2. Previous flooding caused the basement to cave.

3. On August 31, 2000, Stacey executed a durable power of attorney naming Raymond as her legal representative. Raymond is participating in this appeal as amicus curiae.

structure was the appropriate remedy. In support of her position that the structure should not have been razed, Stacey contends that the City improperly denied her a hearing on the issue of demolition, denied her an opportunity to make repairs and/or sell the property, denied her access to the property to remove her personal items, and improperly razed the structure immediately following the trial court's November 6, 2000 order.

■ Section 111.1 of the BOCA Code provides that any person affected by a decision of the code official may appeal to the Board, provided that a written application is filed with twenty days after the decision, notice or order was served. (R.R. 28a) The trial court concluded, and we agree, that Stacey was well aware of this right, given the fact that she exercised her appeal rights to challenge the Board's April 15, 1999 determination that her structure was unsafe, unfit for human habitation, etc. The record clearly demonstrates that Stacey did not appeal the City's notice of demolition and, in fact, asked for an extension of time to make repairs. Therefore, the trial court's conclusion that Stacey was not entitled to a hearing on the issue of demolition was correct.

■ She further contends that the City denied her an opportunity to make repairs or sell her property. The facts show that, realistically, Stacey was on notice as early as 1997 that her structure was in violation of the City's property maintenance code. Although Stacey was aware of this, she did not make any substantial repairs to bring the structure up to code. As noted by the trial court, the only attempt to make repairs occurred when Stacey trucked in two loads of sand.

■ Additionally, Stacey erroneously maintains that the City denied her the right to sell her property. Section 107.5 of the BOCA Code allows an owner to transfer ownership of property in limited circumstances. In order to transfer property, the grantor must furnish the grantee with a copy of the notice of violation issued by the city official and furnish the city official with a signed statement from the grantee acknowledging receipt of the notice of violation and accepting responsibility for the violations. (R.R. 27a) During the September 5, 2000 injunction hearing, Raymond Stacey testified that there were buyers interested in the property; however, he failed to provide documentation evidencing that compliance with Section 107.5 of the BOCA Code was underway.

■ She further complains that the City denied her access to the structure to remove her personal items. The evidence established that the City first informed Stacey on June 1, 2000 that repairs were needed or demolition would take place. On August 1, the City informed Stacey that she had until August 17, 2000 to remove her personal items. Raymond testified that he was given an opportunity to remove personal items. (R.R. 123a) Moreover, he stated that he was at the property weekly, if not daily, despite the fact that the structure had been boarded and padlocked. (R.R. 131a) Thus, there is no merit to Stacey's argument that she did not have an opportunity to retrieve her personal items from the structure prior to its demolition.

■ And finally, Stacey maintains that the City acted hastily in razing the structure the day after the trial court denied her exceptions to the decree nisi. While we do not condone the City's haste, we cannot say that its actions were improper. To reiterate, the City informed Stacey in June of 2000 that demolition would occur if the repairs were not made. She was informed on August 1 that demolition would

occur on August 28. Demolition was stayed pursuant to the temporary injunction. It is evident that Stacey was afforded due process throughout the proceedings and availed herself of the legal avenues available to her.

Stacey also maintains that the trial court erred in determining that the structure required demolition because it was a nuisance and unsafe. We disagree.

Stacey relies on several cases to support her position, all of which are distinguishable. In *Herrit v. Code Mgmt. Appeal Bd. of Butler,* 704 A.2d 186 (Pa.Cmwlth.1997), Herrit was denied the opportunity to make repairs. Under former Section 110.2 of BOCA Code, where the cost of repairs exceeded 100 percent of the then-current value of the structure, repairs were deemed unreasonable and the structure was to be razed. On appeal, we determined that Section 110.2 of the BOCA Code was not rationally related to the public health, safety, or general welfare of the public because there was no rationale basis to deny the property owner the opportunity to make repairs regardless of the costs. As previously noted, Stacey was given ample notice and opportunity to make the required repairs but failed to take substantial steps to do so.

Stacey likewise relies on *Commonwealth v. Borriello,* 696 A.2d 1215 (Pa.Cmwlth. 1997), *aff'd,* 555 Pa. 219, 723 A.2d 1021 (1999), where we reversed a lower court's determination that the property owners were in violation of the Donora Borough Ordinance that required compliance with the BOCA Code. In *Borriello,* the property owners were charged with various violations of the BOCA Code. Their summary convictions, however, were based on other violations for which they were not charged.

On appeal, we reversed the lower court's determination. We concluded that the property owners were not afforded due process of law where they did not have fair notice of the charges upon which their convictions were ultimately based. We did not, however, conclude that the lower court erred in determining that demolition was the appropriate remedy to abate the nuisance. Presently, there was no evidence suggesting that Stacey faced summary offenses. More importantly, though, is the fact that Stacey was fully informed of the repairs necessary to bring her structure into compliance with the BOCA Code.

Stacey further relies on *Groff v. Borough of Sellersville,* 12 Pa.Cmwlth. 315, 314 A.2d 328 (1974). In that case, Groff's building was declared a public nuisance and the lower court provided Groff with ninety days to make the necessary repairs. Because Groff did not comply with the repair order, the lower court determined that the only reasonable remedy was to raze the structure.

We reversed on appeal. Although we concluded that the record supported a finding that the structure was a public nuisance, we determined that the lower court erred in ordering that it be razed without first obtaining evidence that Groff could not or would not make the necessary repairs. Thus, the case was remanded for a more appropriate remedy.

In the case *sub judice,* there is sufficient evidence that Stacey had ample opportunity to make the necessary repairs but failed to do so. Given the entire time frame involved, from 1997 to August of 2000, it is clearly evident that the record supports the trial court's finding that Stacey desired to sell the property rather than make the necessary repairs. (Finding of Fact No. 15) [4]

---

**4.** Stacey further relies on *King v. Tp. of Leac-* *ock,* 122 Pa.Cmwlth. 532, 552 A.2d 741

Of the cases reviewed, the present facts are more akin to those in *Keystone Commercial Prop., Inc. v. City of Pittsburgh,* 464 Pa. 607, 347 A.2d 707 (1975). In December of 1970, Keystone became the equitable owner of property previously owned by the Caplans, who were notified in June of 1970 that their property was in a dangerous condition and was being condemned. Keystone was fully aware of the property's status at the time it entered into the purchase agreement.

In March of 1971, Keystone sealed the building, delaying demolition for six months. During this time Keystone was to repair the dangerous conditions of the building; however, no repairs were made. Thereafter in October of 1972, Keystone indirectly received the same notice received by the Caplans in 1970. In November, the building was demolished.

In an equity action, Keystone sought to compel the City of Pittsburgh to restore the building or to pay the value of the building. The Supreme Court rejected Keystone's argument that it was not provided notice of the demolition via the June 1970 notice because it purchased the property subsequent to that time.

In rejecting this argument, the Supreme Court reviewed the purposes of the notice to demolish, one of which was to provide the property owner with a reasonable time to make repairs. The Court noted that Keystone was fully aware of its obligation to make repairs at the time it purchased the property, two years prior to demolition, and that Keystone used a six-month grace period to stay demolition. No repairs were made during this time. Thus, under those circumstances, Keystone was afforded ample opportunity to remedy the condition.

Stacey argues that *Keystone* is distinguishable because in that case, no repairs were made and presently Raymond was able to distribute two loads of sand into the basement of the structure. However, the extent of Stacey's repairs falls woefully short of those in *Groff* and her reliance on that case is misplaced. We therefore conclude that the trial court did not err in determining that demolition of the Stacey structure was the appropriate remedy.

Accordingly, we affirm.[5]

### ORDER

AND NOW, this 8th day of November, 2001, the November 6, 2000 order of the Court of Common Pleas of Mercer County is hereby AFFIRMED.

---

(1989). In that case, we concluded that the lower court erred in ordering demolition where there was no finding that the structure constituted a public danger and where the parties had made substantial repairs on the premises. We also commented that the property owners were not sufficiently informed of the repairs needed where they were told to bring the property "up to the standards of the general neighborhood." *Id.,* 552 A.2d at 744. We found this standard to be too vague because the township did not have a building code from which to determine the structural soundness of the building involved. Presently, Stacey did not present sufficient evidence demonstrating that she repaired the structure to the point that it was no longer unsafe for human habitation or in danger of collapse.

5. The *Board's request for counsel fees is denied.*