IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Borough of Shenandoah              :
                                   :
        v.                         :
                                   :
Carlos Matilde Cruz,               :     No. 715 C.D. 2016
              Appellant            :     Submitted: December 12, 2016


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
          HONORABLE JOSEPH M. COSGROVE, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE COSGROVE                        FILED:  May 22, 2017


        Carlos M. Cruz (Appellant) appeals from an order of the Court of Common Pleas of Schuylkill County (trial court) which granted a permanent injunction to the Borough of Shenandoah (Borough) on March 4, 2016.  Upon review, we affirm.

        Appellant is the owner of real property located in the Borough at West Coal and Race Streets (Race Street property).  The Race Street property consists of three contiguous row homes attached to the rear of a three-story building.  The Race Street property was initially purchased by Appellant's brother and sister-in-law in September 2012 by means of a tax sale.  In July 2014, the structural integrity of the buildings failed and the walls and roof of the buildings collapsed.  This resulted in a sewer line break on the premises, which caused sewage to collect in the basement.  The Borough initiated an enforcement action against Appellant's brother and sister-in-law for maintaining a dangerous building in violation of a

Borough ordinance. Following hearings before the magisterial district judge, Appellant's brother and sister-in-law were found guilty of the ordinance violations in April 2015. They did not appeal these findings.

Shortly thereafter, on May 21, 2015, Appellant took ownership of the Race Street property by means of a quitclaim deed for consideration of one dollar. The Borough sent a notice to Appellant that, prior to transfer of ownership, a signed and notarized statement was required confirming Appellant had received notice of the ordinance violations and that he acknowledged full responsibility for those violations.

On December 11, 2015, the Borough initiated an action in equity pursuant to the Neighborhood Blight Reclamation and Revitalization Act[1] (Act) and Section 1202 of the Borough Code.[2] A Petition for Preliminary Injunction was filed by the Borough on December 21, 2015. Following a hearing, the preliminary injunction was granted by the trial court on February 9, 2016. A second hearing was held on March 4, 2016, and the trial court entered an order making permanent the preliminary injunction and directing the demolition of the structures on the Race Street property. Appellant filed with the trial court a Petition for Stay/Supersedeas of the permanent injunction. The Supersedeas was granted, conditioned upon Appellant posting a bond in the amount of $75,000.00. Appellant failed to post any such bond. This appeal followed.[3,4]

---

[1] 53 Pa.C.S. §§ 6101-6145.

[2] 8 Pa.C.S. §§ 1202.

[3] When reviewing a grant of a permanent injunction which turns on whether the lower court properly found the party seeking the injunction established a clear right to relief as a matter of law, the standard of review for a question of law is *de novo* and the scope of review is plenary.

# DISCUSSION

As set forth in Appellant's brief, the following issues are raised with this Court:

(1) Whether the trial court erred as a matter of law in finding that the Appellee established it's [sic] clear right to relief by clear and convincing evidence where it failed to prove basic statutory elements of it's [sic] case.

(2) Whether the trial court erred as a matter of law by ordering the immediate demolition of the property in question and not providing Appellant with reasonable time to make repairs or make the property otherwise conform to law at his own expense.

(3) Whether the demolition of the property in question is an over broad remedy where a more appropriate remey [sic] could be devised.

(Appellant's Brief at 5.)

First, Appellant argues the trial court erred in finding the Borough established its clear right to relief. (Appellant's Brief at 14.) Appellant contends the record fails to demonstrate he is the owner of the property in question, and fails

---

*Penn Square General Corporation v. County of Lancaster,* 936 A.2d 158, 167 n.7 (Pa. Cmwlth. 2007).

[4] It is not clear from the record in this case whether Appellant filed post-trial motions, as required by Pa.R.C.P. No. 227.1. The Borough has not raised the lack of post-trial motions in its brief. Pursuant to Rule 227.1, a party must file post-trial motions at the conclusion of a trial in any type of action in order to preserve claims the party wishes to raise on appeal. Even where neither party has raised a failure to preserve issues for review by not filing post-trial motions pursuant to Pa.R.C.P. No. 227.1, that failure does not prevent this Court from doing so *sua sponte. Borough of Harveys Lake v. Heck,* 719 A.2d 378, 380 n.4 (Pa. Cmwlth. 1998). Given the lack of clarity in the record here, we decline to raise the issue *sua sponte* and will address the merits of Appellant's arguments.

to show he was served with an order to abate the nuisance and provided the requisite six months in which to correct any violation. *Id.* at 15-16.

Section 6111(1)(i) of the Act provides a municipality may institute an action for a "continuing violation for which the owner takes no substantial step to correct within six months following receipt of an order to correct the violation, unless the order is subject to a pending appeal before the administrative agency or court." 53 Pa.C.S. § 6111(1)(i). An injunction is an extraordinary remedy that should be used with caution and only where the rights and equity of the petitioner are clear and free from doubt and the harm to be remedied is great and irreparable. *Woodward Township v. Zerbe*, 6 A.3d 651, 658 (Pa. Cmwlth. 2010). The required elements of injunctive relief are: a clear right to relief; an urgent necessity to avoid an injury that cannot be compensated in damages; and a finding that greater injury will result from refusing, rather than granting, the relief requested. *Big Bass Lake Community Association v. Warren*, 950 A.2d 1137, 1144 (Pa. Cmwlth. 2008). Even where the essential prerequisites of an injunction are satisfied, the court must narrowly tailor the remedy to abate the injury. *Id.* at 1144-1145.

An injunction which commands the performance of an affirmative act, a mandatory injunction, is the rarest form of injunctive relief and is often described as an extreme remedy. *Woodward Township,* 6 A.3d at 658. The case for a mandatory injunction must be made by a very strong showing, one stronger than that required for a restraining-type injunction. *Big Bass Lake,* 950 A.2d at 1145. The power to grant or refuse an injunction rests within the sound discretion of the court under the circumstances and the facts of the particular case. *Id.*

As to Appellant's suggestion the record from the trial court fails to demonstrate he is the owner of the Race Street property, the Borough filed its

4

complaint against Appellant on December 11, 2015. (Reproduced Record (R.R.) at 2a.) Paragraph 4 of that complaint avers that at all times material to the cause of action, Appellant was and still is the owner of real property located at West Coal and Race Streets, Shenandoah, Schuylkill County, Pennsylvania 17976. *Id.* Attached to the complaint as Exhibit "A" was the quitclaim deed conveying the Race Street property to Appellant. (R.R. at 11a.) To date, Appellant has failed to file a responsive pleading to this complaint. As such, the allegations of ownership were deemed admitted by operation of Pa.R.C.P. No. 1029(b).[5]

Because Appellant cannot legitimately argue he is not the owner of the Race Street property, we turn to the issue of whether the Borough complied with the procedural requirements of Section 6111(1)(i) of the Act.

The Borough's complaint contains several averments, including the following:

1. Appellant spoke to the Borough Manager on seven separate dates in 2014 and Appellant admitted the Race Street property needed to be demolished and indicated he would get the work done, specifically demolishing the Race Street property and repairing the sewer lines. (R.R. at 4a.)

2. A notice of violation dated December 17, 2014, was mailed to Appellant's brother and sister-in-law. (R.R. at 5a.)

3. Appellant, acting on behalf of his brother and sister-in-law, contacted the Borough regarding the notice of violation and attempted to resolve same. (R.R. at 5a.)

4. A citation was issued against Appellant's brother and sister-in-law on September 28, 2014 for violation of the Borough Code. (R.R. at 5a.)

---

[5] "Averments in a pleading to which a responsive pleading is required are admitted when not denied specifically or by necessary implication." Pa.R.C.P. No. 1029(b).

5

5. Appellant attended the resultant hearings on behalf of his brother and sister-in-law. (R.R. at 5a.)

6. Appellant requested a meeting with the Borough Council to discuss resolution of the nuisance. (R.R. at 6a.)

Because Appellant has not filed a responsive pleading to these averments, they are deemed admitted pursuant to Pa.R.C.P. No. 1029(b). A review of the record further indicates Appellant had well more than the requisite six months' time in which to remediate violations of which he was well aware. Pursuant to Section 6111(1)(i), however, the six-month period would only begin to run after the receipt of an order to correct the violation. Presumably, an order was issued by the magisterial district judge after Appellant's brother and sister-in-law were found guilty of violating the Borough ordinance. However, there is no evidence of record to indicate Appellant received a copy of this order or that he was named in it, an unlikely event given the citation was not issued to him.

The Borough filed its action in December 2015. The trial court's order granting the Borough's preliminary injunction was issued on February 9, 2016. (R.R. at 55a.) Given the complaint was filed prior to Appellant being in receipt of an order to correct the violation, it is clear the six month remediation period required under Section 6111(1)(i) was not met.

Our analysis does not end there, however, because the complaint filed by the Borough was also brought under the provisions of the Borough Code, more specifically under Section 1202(4). Section 1202 of the Borough Code sets forth the specific powers of the Borough. Subsection (4) grants a borough the specific power to "prohibit and remove any nuisance or dangerous structure on public or private grounds, including, but not limited to, accumulations of garbage and rubbish… The borough may… seek relief by bill in equity." 8 Pa.C.S. § 1202(4).

6

Section 1202 contains no language regarding receipt of an order by the property owner prior to the initiation of an action.

Appellant argues the Borough failed to plead and litigate the enforcement of a specific ordinance and therefore a clear right to relief could not be demonstrated. He asserts Section 1202(4) must be "used in conjunction with Section 1202(5) of the Borough Code to enforce the specific ordinances passed under the Code's authority." (Appellant's Brief at 18.) Citing *Borough of New Bloomfield v. Wagner,* 35 A.3d 839 (Pa. Cmwlth. 2012), Appellant argues the Borough has not shown that Appellant violated a specific section of the Borough's property code and, therefore, the underlying equity action was based merely on an allegation that the Race Street property at issue was a nuisance. (Appellant's Brief at 19.) Appellant points to *City of Beaver Falls v. Samuels,* 414 A.2d 676 (Pa. Super. 1979) as standing for the proposition that, where no ordinance was cited by the city when it sought relief, an equity suit is not authorized.

It is not clear how this Court's holding in *Borough of New Bloomfield* assists Appellant as that case involved the validity of an ordinance adopted pursuant to Section 1202(5)[6] and not an analysis of what must be pleaded when initiating an action under Section 1202(4). Appellant's interpretation of *Beaver Falls* is based on a footnote of that case, which in pertinent part states "[t]he section in question there, 53 P.S. [§] 46202(5)[7], is the parallel to [§] 37403(16)[8] of

---

[6] Subsection (5) grants the Borough the specific power to "make regulations as may be necessary for the health, safety, morals, general welfare and cleanliness and beauty, convenience, comfort and safety of the borough." 8 Pa.C.S. § 1202(5).

[7] Act of February 1, 1966, P.L. (1965) 1656, *as amended*, *formerly* 53 P.S. § 46202, *repealed and reenacted by* the Act of April 18, 2014, P.L. 432, effective June 17, 2014, 8 Pa.C.S. § 1202.

7

the Third Class City Code and only contemplates an equity action in conjunction with an ordinance." *Beaver Falls,* 414 A.2d at 678 n.2. While the court in *Beaver Falls* referenced the statutory precursor to Section 1202(4), the case itself turned on an interpretation of a different, and likewise-repealed, provision of the Borough Code. Because the passage in that particular footnote was not necessary to the outcome of the case, it merely constitutes non-binding dicta. *See In the Interest of L.J.,* 79 A.3d 1073, 1081 (Pa. 2013). To the extent this footnote is persuasive, the complaint filed by the Borough sufficiently pleads a violation of the Borough ordinance.

The citation issued to Appellant's brother and sister-in-law sets forth a violation of Section 4, Subsection 102 of the Borough's Ordinance. The nature of the offense is described in the citation as involving "dangerous buildings that are declared to be a nuisance that the owner has failed to repair, vacate, or demolish after receiving letter." (R.R. at 25a.) As discussed above, this citation was attached to the complaint filed by the Borough. The complaint included averments that Appellant had multiple conversations with the Borough manager in regards to the condition of the Race Street property. Appellant was aware of the citation filed against his brother and sister-in-law and attended the hearing before the magisterial district judge on their behalf, and requested a meeting with the Borough Council to discuss resolution of the nuisance. Appellant took possession of the Race Street property knowing it had been declared a nuisance.

We therefore conclude the complaint filed by the Borough complied with any pleading requirements set forth in Section 1202(4) of the Borough Code.

---

[8] Act of June 23, 1931, P.L. 932, *as amended,* formally 53 P.S. § 37403, as codified by the Act of November 24, 2015, P.L. 242, effective January 25, 2016, 11 Pa.C.S. § 12403.

The Borough has therefore established it has a clear right to relief under Section 1202(4) to "require the removal of any nuisance or dangerous structure by the owner… or… seek relief by bill in equity."

Appellant next argues he was not given reasonable time to bring the Race Street property into compliance following the trial court's order to demolish, as the trial court ordered him to abate the nuisance immediately. (Appellant's Brief at 22.) Appellant's argument is presumably premised upon a belief that the buildings situated on the Race Street property are salvageable.

The trial court's order dated March 4, 2016 indeed directed the property be demolished immediately, and ordered Appellant to remove all accumulated raw sewage and repair the broken sewer line within fifteen days. (R.R. at 59a.) If Appellant failed to demolish the buildings within three days of the date of the order, the Borough was permitted to take the steps necessary to do so. *Id.* We can only assume the trial court's order did not allow for more time to bring the Race Street property into compliance because such compliance was not possible. Appellant has offered nothing contrary to this conclusion.

When it is determined that a public nuisance exists, the courts should not devise a remedy harsher than the minimum necessary to properly abate the nuisance. *Groff v. Borough of Sellersville,* 314 A.2d 328, 332 (Pa. Cmwlth. 1974). The remedy selected to abate the nuisance should not be punitive; rather, it should be shaped to correspond to the nature and extent of the nuisance. *King v. Township of Leacock,* 552 A.2d 741, 744 (Pa. Cmwlth. 1989). The radical remedy of demolition should only be used when there exists no other practical alternative. *Id.*

Appellant failed to appear for the February 9, 2016 hearing on the Borough's Petition for Preliminary Injunction, despite having been served with a

9

notice of the date of the hearing. (R.R. at 65a-66a, 82a-86a.) At the March 4, 2016 hearing to make the injunction permanent, Appellant was provided an opportunity to testify on his own behalf but chose not to, stating that he would "close the process and [be] done with whatever has to go on today." (R.R. at 205a.) Therefore, the testimony and evidence presented at the February 9, 2016 and March 4, 2016 hearings as to derelict conditions of the Race Street property were uncontroverted.

Donald Segal (Segal), president of the Borough Council, testified to the nature of complaints about the Race Street property, specifically that the building was falling down, animals were roaming the building, and there was a smell from raw sewage that had been dumping from the property. (R.R. at 70a.) The raw sewage was "through the entire property." *Id.* at 72a.

Irene Kudel (Kudel), whose property lies adjacent to the Race Street property, testified at the March 4, 2016 hearing as to the conditions of that property and the presence of rats, snakes and skunks. (R.R. at 184a.) Debris from the Race Street property had encroached on her property to the extent she could no longer mow the grass by her fence. *Id.* The smell from the broken sewer line was evident inside her home, even during the wintertime. *Id.* at 183a. She used her son's smoker in the summer months so she could "smell the wood instead of the crap." *Id.*

Another neighbor, James Paulaconis (Paulaconis), testified he had lived in his home for forty years but was "ready to move because [he wasn't] going to retire next to an open sewer with a building that looks like it belonged in Syria ready to fall on the street" and his property along with it. (R.R. at 175a.) Paulaconis testified the sewer collapsed around the time the roof fell in, "**a year**

10

**and a half ago**." *Id.* Based on that uncontested time line, raw sewage has been filling the property for the better part of three years. Paulaconis described a "hole in the roof the size of a Volkswagen that's been in there forever and the rain and the mold and everything just pours right into that lower property." *Id.* at 177a. He testified to having spent $11,000.00 on a patio he was ashamed to have people on in the summertime because of the smell from the Race Street property. *Id.* at 176a.

It is likewise apparent Appellant was provided several opportunities to abate the nuisance conditions at the property and simply chose not to. Having spoken multiple times with the Borough manager in 2014 and represented his brother and sister-in-law in proceedings before the magisterial district judge, Appellant had clear knowledge of the conditions prior to his acquisition of the Race Street property in May 2015. Following that acquisition, by letter dated September 21, 2015, Appellant was notified by the Borough that transfer of the property was made in violation of Section 107.6 of the International Property Maintenance Code, which prohibits the transfer of property upon which a Notice of Violation has been issued. (R.R. at 27a.) This letter notified Appellant that, to transfer property against which a violation has been issued, a signed and notarized statement must be provided which acknowledges responsibility for the violations. *Id.* Appellant was further notified the Borough required his assurances that he would make the necessary corrections and abate the violations. *Id.* This letter was mailed via certified mail and was signed for by Appellant on September 26, 2015. *Id.* at 28a. Segal testified he worked with Appellant close to ten months in an attempt to get the nuisance conditions abated. (R.R. at 69a.)

The trial court's February 9, 2016 order granting the preliminary injunction provided Appellant fifteen days from the date of the order to arrange for

11

the demolition of the premises. (R.R. at 57a.) Appellant instead "spent a lot of time at [his] mother's house in Jersey." (R.R. at 166a.)

Kudel testified that the last time she saw Appellant was in June 2015. (R.R. 189a.) Appellant admitted the last date he was at the Race Street property was June 10, 2015. (R.R. at 170a.) Paulaconis testified some preliminary work was done when the roof collapsed to keep the overhang from falling into the street. *Id.* at 176a. Otherwise, he observed Appellant removing "some radiators" from the property and replacing them with construction debris and tires. *Id.*

The record is replete with evidence to support demolition of the structures on the Race Street property. Appellant has provided no details about how he would bring the property into compliance, only argued he was not given that opportunity. The record speaks otherwise. Appellant has done nothing to remediate the conditions at the Race Street property since it was conveyed to him nearly two years ago. This case can be most likened to *City of Erie v. Stelmack*, 780 A.2d 824 (Pa. Cmwlth. 2001), in which this Court upheld the trial court's order granting the city's request to demolish an apartment building. The trial court noted what repairs had been made to the building and the numerous opportunities given to appellant to bring the building up to code and which were ignored. Instantly, the trial court did not err in ordering the demolition of rat- and snake-infested structures filled with several years' worth of raw sewage and which border occupied homes.

Finally, Appellant argues the remedy ordered by the trial court was overly broad and unduly oppressive upon the Appellant. (Appellant's Brief at 28.)

12

Having already concluded no practical alternative exists but to demolish the structures on the Race Street property, we need not address this argument a second time.

For these reasons, the March 4, 2016 order of the trial court is affirmed.

_____
JOSEPH M. COSGROVE, Judge

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Borough of Shenandoah            :
                                      :
            v.                   :
                                        :
Carlos Matilde Cruz,          :    No. 715 C.D. 2016
                Appellant       :

## O R D E R

AND NOW, this 22nd day of May, 2017, the March 4, 2016 order of the Court of Common Pleas of Schuylkill County is affirmed.

_____
JOSEPH M. COSGROVE, Judge