**CITY OF ERIE,**

v.

**Andrew J. STELMACK, Jr., Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 8, 2001.

Decided July 17, 2001.

Anthony A. Logue, Erie, for appellant.

Gerald J. Villella, Erie, for appellee.

Before SMITH, J., FRIEDMAN, J., and McCLOSKEY, Senior Judge.

McCLOSKEY, Senior Judge.

Andrew J. Stelmack, Jr. (Appellant) appeals from an order of the Court of Common Pleas of Erie County (trial court), which permitted the City of Erie (City) to demolish a structure located on Appellant's property. Additionally, the trial court ordered Appellant to be assessed the costs of the demolition and placed a lien on the property. We affirm.

Appellant is the owner of property located at 653 Hess Avenue in Erie, Pennsylvania (the property), upon which a four-unit residential building exists. In 1996, the building became vacant and utility service to the property ceased.[1] In July, 1999, the City notified Appellant to repair windows located on the second-floor of the building from which glass was hanging and to cut the property's high weeds. Appellant failed to act regarding the notices and the City took action. Throughout the following months, the City continued to fine Appellant for numerous other violations of the City's Property Maintenance Code (Code).[2]

On February 3, 2000, the City posted a repair or demolish order on the property and at Appellant's residence, specifying numerous violations of the City's Code and giving Appellant thirty days to make repairs. (R.R. at 4a). Appellant failed to respond to the order and the City filed a citation with a district justice for failure to comply with the order. On March 23, 2000, the City posted an order to demolish and remove a public nuisance on the property and at Appellant's residence.

· On June 2, 2000, the City filed a petition for removal of a public nuisance with the trial court seeking an order permitting the City to demolish the building. Subsequently, pursuant to the citation, the district justice ordered Appellant to arrange an interior inspection of the premises. The inspection revealed considerable debris and numerous violations of the Code. The district justice fined Appellant $1,000.00 and instructed the City to file continuous citations until all violations were corrected.[3] (R.R. at 6a–7a).

On July 24, 2000, the trial court held a public nuisance hearing at which the City's code enforcement/demolition coordinator, John Vahey, testified that the building exhibited numerous violations of the Code.[4] (R.R. at 8a–9a). Mr. Vahey presented photographs, which were taken earlier that day, evidencing the disrepair of the building. (R.R. at 7a–8a). Mr. Vahey further testified that, due to delinquent taxes, Appellant would not qualify to receive repair funds from the City's Redevelopment Authority. (R.R. at 13a–14a).

Additionally, the City presented its housing code enforcement officer, Pete

---

1. Appellant currently owes more than $10,000.00 in outstanding water, sewer and refuse bills. (R.R. at 130a).

2. The City adopted The BOCA National Property Maintenance Code.

3. The City's Redevelopment Authority estimated the cost of repairs to make the building habitable at approximately $60,000.00 to $80,000.00. These repairs included major heating, plumbing, electrical, kitchen, window, siding, painting and other more general repairs.

4. We note that Appellant was *pro se* at the hearing before the trial court but has secured counsel for the appeal before this Court. Additionally, we emphasize that "any layperson choosing to represent himself in a legal proceeding must, to some reasonable extent, assume the risk that his lack of expertise and legal training will prove his undoing." *Vann v. Unemployment Compensation Board of Review*, 508 Pa. 139, 148, 494 A.2d 1081, 1086 (1985) (citing *Groch v. Unemployment Compensation Board of Review*, 81 Pa.Cmwlth. 26, 472 A.2d 286, 288 (1984)).

Stewart, who testified that Appellant admitted that he does not have the funds to repair the building. (R.R. at 18a). Additionally, Mr. Stewart testified that the property is a nuisance and that Appellant would not qualify to receive funds to repair it. (R.R. at 19a–20a).

Thereafter, the trial court conducted an inspection of the building. On August 1, 2000, the trial court held another hearing at which Appellant presented receipts for equipment bought to repair the building and testified that he installed siding, cut the grass, removed weeds and repaired the porch and spout. (R.R. at 34a–53a). Appellant asserted that he intended to make all necessary repairs to the building within a sixty-day period. The trial court granted Appellant sixty days to make the necessary repairs, until October 2, 2000, or the City would be permitted to demolish the building. (R.R. at 37a).

During the following months, the City informed the trial court of its continued concerns regarding the property and Appellant's failure to make the necessary repairs. Thereafter, the trial court held another hearing on December 4, 2000, at which the City presented the testimony of Richard Sadlier, the City's fire inspector, who testified that the building continued to remain a fire hazard and a danger to the public welfare. (R.R. at 50a–51a). Additionally, Mr. Vahey testified that a number of broken windows, a rotting front porch deck, rotting steps and rotting gutters still remained. (R.R. at 58a–61a). In opposition, Appellant testified that he had spent a considerable amount of money on repairs and had completed much of the work. Appellant specifically testified that he spent $4,000.00 on electrical repairs. (R.R. at 102a).

The trial court declared the building a public nuisance and ordered the City to demolish it, concluding that the City had fulfilled all applicable notice requirements and had given Appellant numerous opportunities to correct the violations.[5] In its opinion, the trial court noted:

This Court is well aware that demolition of the apartment building owned by [Appellant] is a radical remedy to be employed only in those cases where no other practical alternative exists. But in the case at bar the problems in and about the structure are legion, expensive to repair, and long-standing. The building has been unheated for years and the harsh Erie weather, especially winters, have taken their toll on the foundation and walls causing rot, cracks in the foundation, deteriorating mortar, various, random damage to structure, and weed growth, all from lack of interior or exterior care for the last four years. Further the property will remain uninhabitable even with thousands of dollars in repairs because of over $10,000 in delinquent water, sewer and garbage service bills. Also the building is a fire hazard.

5. Section PM–110.1 of the Code provides:
    The code official shall order the *owner* of any *premises* upon which is located any structure, which in the code official's judgement is so old, dilapidated or has become so out of repair as to be dangerous, unsafe, unsanitary or otherwise unfit for human habitation or *occupancy*, and such that it is unreasonable to repair the structure, to raze and remove such structure; or if the structure is capable of being made safe by repairs, to repair and make safe and sanitary or to raze and remove at the *owner's* option; or where there has been a cessation of normal construction of any structure for a period of more than two years, to raze and remove the structure.
    Furthermore, Section PM–202.0 of the Code defines code official as "[t]he official who is charged with the administration and enforcement of this code, or any duly authorized representative."

(Trial Court's Opinion, R.R. at 117a–118a). Appellant appealed.

On appeal to this Court,[6] Appellant argues that the trial court's decision is in error since the record is absent of any specific findings that the property is a public danger. Additionally, Appellant asserts that the trial court erred by allowing irrelevant and prejudicial information to be admitted into evidence. Finally, Appellant argues that the trial court failed to consider the improvements made by Appellant to the property. We disagree with each of these contentions.

Initially, we note that a public nuisance has been defined as, "an inconvenience or troublesome offense that annoys the whole community in general, and not merely some particular person, and produces no greater injury to one person than to another...." *Groff v. Borough of Sellersville,* 12 Pa.Cmwlth. 315, 314 A.2d 328, 330 (1974). When a public nuisance exists, the court should not devise a remedy harsher than the minimum necessary to properly abate the nuisance. 314 A.2d at 332. Furthermore, the remedy selected to abate the nuisance should not be punitive; rather, it should be shaped to correspond to the nature and extent of the nuisance. *King,* 552 A.2d at 744.

Appellant relies on the *King* case for the proposition that the trial court cannot authorize the City to demolish the building absent a finding that the building is a public danger. The *King* court affirmed the trial court's order declaring the landowner's property a public nuisance but vacated the order of demolition and remanded the recorded for the purpose of making specific factual findings concerning the safety of the landowner's building. While emphasizing the radical nature of the demolition remedy in a public nuisance proceeding, the opinion provides:

> There are a variety of remedies to which the Township may resort in abating the nuisance at issue without actually demolishing appellants' uninhabited property. For example, if the electrical wiring in the structure is sub standard, the Township can turn off the flow of electricity from its source until the wiring is satisfactory; if the building is open, the Township can close it at the appellants' expense; if the floors are unsound, the Township can forbid tenancy until the floors are sound. In addition, more traditional remedies such as contempt and damages are available to the Township which will likewise assure abatement of the nuisance. The radical remedy of demolition should be used only when there exists no other practical alternative.

*King,* 552 A.2d at 744.

Here, it is evident that no other practical alternative exists, absent the City completing all necessary repairs itself. The City was forced to repair dangerous broken windows and cut the property's high weeds because Appellant failed to act. Moreover, the trial court specifically found that "the structure in question is so out of repair that *it is unsafe and unfit for human habitation.*" (Trial Court's Opinion, R.R. at 118a) (emphasis added). This finding is supported by the testimony of Mr. Sadlier which provides:

---

6. Our scope of review in an equity action is limited to a determination of whether the Chancellor's findings of fact are supported by substantial evidence, whether an error of law has been made, or whether the Chancellor abused his discretion. *King v. Township of Leacock,* 122 Pa.Cmwlth. 532, 552 A.2d 741 (1989). The presence of evidence contrary to the Chancellor's findings does not make them unsupported since issues of credibility and evidentiary weight are within the exclusive province of the Chancellor. *Id.*

In reference to the fire code, I find the property to be unsafe—in an unsafe condition from a fire perspective, in it's current can't (*sic*). If the—should a fire occur on that property, it would present a significant hazard to the public welfare and also to the fire department, only because a fire that would accidentally start on that property for whatever reason, given the deteriorated condition of some of it and that, indeed, would present a hazard to the fire department and public welfare, should a fire start in there.

(R.R. at 50a–51a).

In light of the trial court's specific finding that the building is unsafe, which is supported by substantial evidence, we conclude that the trial court properly granted the City's demolition order.

■ Next, Appellant argues that the trial court erred by allowing irrelevant and prejudicial information to be admitted into evidence. Specifically, Appellant asserts that a document showing that Appellant had spent $1,120.00 in electrical repairs, disputing Appellant's testimony that he spent $4,000.00 in repairs, was hearsay and therefore, inadmissible. (R.R. at 131a). However, as Appellant failed to object to the admission of this document at the hearing, he has failed to preserve the issue for appeal purposes. *See* Pa. R.A.P. 302(a) (issues not raised in the lower court are waived and cannot be raised for the first time on appeal). Thus, we will not address this issue.

Finally, Appellant argues that the trial court failed to consider the repairs he made to the property. However, the trial court's opinion provides:

It is the considered opinion of this Court after having viewed the premises, reviewed photos, exhibits, and documents pertaining thereto, heard testimony, and considered the history of this matter that the structure in question is so out of repair that it is unsafe and unfit for human habitation, would be cost prohibitive to repair to code requirements and/or overcome the debt necessary for occupant mandated services. As such this Court is constrained to conclude that the structure is a public nuisance which must be expeditiously razed without further opportunity of the owner to repair.

As previously noted this property has been vacant and in disrepair for over four years; the owner, Mr. Stelmack, has been given numerous opportunities, warnings, citations, fines, and/or directives to maintain, repair, bring up to code, eliminate the debt, and do any and all things necessary to save the structure from demolition and has failed and/or refused to meet his obligations, make good on his promises, or otherwise satisfy the requirements of the building code, the Courts or the law. The Defendant has made numerous claims as to money spent, repairs made, and debts resolved but he has failed to document any of his alleged attempts. . . .

(Trail Court's Opinion, R.R. at 118a).

It is clear from the trial court's opinion that it did in fact consider what limited repairs Appellant made to the building. Moreover, we believe that the trial court properly considered the numerous opportunities to bring the building up to Code which Appellant ignored. Thus, in light of Appellant's blatant disregard of the citations, fines and warnings issued by the City, we conclude that the trial court properly granted the City's request to demolish Appellant's building.

Accordingly, the order of the trial court is hereby affirmed.

## ORDER

AND NOW, this 17th day of July, 2001, the order of the Court of Common Pleas of Erie County is hereby affirmed.