# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Samuel Halpern and Elinor Halpern, | : |
| | : |
| Appellants | : |
| | : No. 647 C.D. 2016 |
| v. | : Submitted: April 20, 2017 |
| | : |
| Housing Appeals Review Board of the | : |
| City of Scranton | : |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE JOSEPH M. COSGROVE, Judge (**P**)
          HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                          **FILED:  December 21, 2017**

Samuel and Elinor Halpern appeal (collectively the Halperns) the March 18, 2016 order issued by the Court of Common Pleas of Lackawanna County (Trial Court), which stayed the demolition of 942-944 Clay Avenue in the City of Scranton (the Property) upon condition that the Halperns post a bond and obtain a certificate of occupancy by a date certain from the City of Scranton (City).  The Trial Court's order follows the Halperns' petition for a rule to show cause and does not address the underlying December 15, 2014 decision of the City's Housing Appeals Review Board (Board), which upheld the notice of demolition of the Property issued by the City's Department of License, Inspection and Permits (LIP).  For the reasons that follow, we quash the appeal of the Trial Court's March 18, 2016 order and direct the Trial Court to issue a decision on the merits of the Halperns' appeal of the Board's decision.

In 2006, the Halperns purchased the Property as an investment; the Halperns' personal residence is located in West Hartford, Connecticut. The Property was condemned by LIP on September 15, 2008 with a handwritten "field correction notice" because it was vacant, the grass was overgrown, and there was debris in the rear of the Property. (September 15, 2008 LIP Notice, Reproduced Record (R.R.) at 50a.) The code violations underlying the condemnation were stated in a subsequent letter to the Halperns as:

> PM -108.1.3 Structure unfit for human occupancy: A structure is unfit for human occupancy whenever the code official finds that such structure is unsafe, unlawful or, because of the degree to which the structure is in disrepair or lacks maintenance, is unsanitary, vermin or rat infested, contains filth and contamination, or lacks ventilation, illumination, sanitary or heating facilities or other essential equipment required by this code, or because the location of the structure constitutes a hazard to the occupants of the structure or to the public.
>
> TO WIT: This property was condemned as a vacant/abandoned structure.
>
> PM -303.4. Weeds: All premises and exterior property shall be maintained free from weeds or plant growth in excess of 10 inches (254 mm). All noxious weeds shall be prohibited. Weeds shall be defined as all grasses, annual plants and vegetation, other than trees or shrubs provided, however, this term shall not include cultivated flowers and gardens.
>
> TO WIT: This property was surrounded by high grass, and weeds.
>
> PM -306.1 Accumulation of rubbish or garbage: All exterior property and premise, and the interior of every

2

> structure shall be free from any accumulation of rubbish or garbage.
>
> TO WIT: Remove all debris from exterior including appliances.

(September 17, 2008 LIP Letter to the Halperns, R.R. at 51a-52a.) The Halperns did not take action to lift and remove the condemnation. On February 10, 2014, LIP issued a demolition order for the Property, which the Halperns appealed to the Board. (February 10, 2014 LIP Letter to the Halperns, R.R. at 73a.) On December 15, 2014, the Board issued a decision upholding the demolition order. (Board Decision and Order, R.R. at 62a-72a.)

The Halperns appealed the Board's order and filed an Emergency Petition for Supersedeas in the Trial Court. A hearing was held on April 9, 2015. (Hearing Transcript I (H.T. I), R.R. at 202a-233a.) The Trial Court granted the Petition in an April 9, 2015 order and required the Halperns to file a $5,000 bond with the City of Scranton. On June 2, 2015, the Halperns, LIP and the Board reached an agreement whereby the Halperns would complete the necessary work to obtain a certificate of occupancy by December 31, 2015 or the supersedeas would be lifted and the bond would be forfeited to the City. (June 2, 2015 City Department of Law Letter to the Halperns, R.R. at 250a.) A certificate of occupancy was not obtained and LIP posted stop work orders on the Property on January 2, 2016. An agreement was reached with the City to allow work to continue until January 31, 2016, and on February 2, 2016 a second stop work order was posted on the Property. On March 14, 2016, the Halperns filed a Rule to Show Cause why the stop work orders should not be removed. A second hearing was held before the Trial Court on March 17, 2016. (Hearing Transcript II (H.T. II), R.R. at 260a-340a.) A contractor for the Halperns testified that no work was done on the Property between 2010 and

3

November 2015 and the water meters were removed by the City during that time, but that he had been working on the Property since November 2015. (H.T. II at 17, 22-24, R.R. at 276a, 280a-283a.) During the hearing, the City suggested giving the Halperns 60 days to complete the work necessary to obtain a certificate of occupancy, over the objection of both LIP and the Board. (H.T. II at 68-69, R.R. at 327a-328a.) Following the hearing, the Trial Court issued the March 18, 2016 order providing that if the Halperns did not obtain a certificate of occupancy from the City by May 23, 2016, then the City could immediately demolish the Property.

Before this Court is the Halperns' appeal from the Trial Court's March 18, 2016 order. Procedurally, this order was issued as a continuation of the supersedeas; this is not an appeal of the Trial Court's review of the Board's decision. The Trial Court has not addressed the Halperns' appeal of the Board's decision outside of the context of the Emergency Petition for Supersedeas and there has been no review of the weighty constitutional, legal, and factual issues raised therein. While there is reference to the June 2, 2015 agreement to allow the Halperns to continue working on the Property as a "settlement," this agreement did not settle the appeal and was never filed with the Trial Court, except as an evidentiary exhibit during the second hearing, and the actual appeal has not been withdrawn, discontinued or dismissed. Accordingly, the Trial Court should have determined whether the Halperns established: (1) that they are likely to prevail on the merits of the appeal; (2) that without the requested relief, they will suffer irreparable injury; (3) that a stay will not substantially harm other interested parties in the proceedings; and (4) that a stay will not adversely affect the public interest. *Pennsylvania Public Utility Commission v. Process Gas Consumers Group*, 467 A.2d 805, 808-09 (Pa. 1983). However, application of the *Process Gas* standard is complicated in this

4

matter because the merits of the appeal and the question of whether a stay would adversely affect the public interest are inextricably intertwined. The interrelated nature of these two elements is reflected in the arguments presented to this Court by the parties. The Halperns argue, *inter alia*, that the City has violated the Pennsylvania and United States Constitutions by attempting to demolish a property that is structurally sound and not a hazard to the public and that the basis for the original condemnation order is insufficient to support demolition of the Property. The City argues that the Property is a public nuisance because it has remained uninhabited and unfinished, and because the Halperns have failed to take action to lift the condemnation order.

Based on the record before this Court, the Trial Court did not err in issuing a stay of the Board's order but the Trial Court did err in attaching conditions that would lift the stay prior to a determination on the merits of the appeal. However, because our Supreme Court has held that an order granting or denying a stay is a non-appealable interlocutory order, we must quash the Halperns' appeal. *Commonwealth v. Morris*, 771 A.2d 721, 728-30 (Pa. 2001); *Farmers First Bank v. Wagner*, 687 A.2d 390, 391-92 (Pa. Super. 1997); *Richardson Brands, Inc. v. Pennsylvania Dutch Co.*, 592 A.2d 77, 80 (Pa. Super. 1991); *Grimme Combustion, Inc. v. Mergentime Corp.*, 560 A.2d 793, 794 (Pa. Super. 1989).

Factually, there is no question that the Halperns purchased the Property over ten years ago and have been dilatory in both their interactions with LIP and their work on the Property to render it habitable. Yet, the record does not contain evidence or factual findings that support a conclusion that the Property is a danger to the public. The evidence shows that the Property is and has remained vacant since the Halperns purchased it and that the condition of the Property does not satisfy the

5

standard necessary to obtain a certificate of occupancy. The evidence also shows a history of overgrowth and debris on the Property. However, there is no code, statute or common law supporting LIP's authority under the police powers to demolish a Property because it is vacant and has or previously had overgrown weeds and debris in the surrounding yards. Moreover, the evidence relied upon by the Board regarding the condition of the Property was offered by the neighbors and concerned the exterior of the Property. While LIP offered testimony concerning the procedure followed to issue an order of condemnation and an order of demolition of the Property, LIP did not offer any testimony or evidence from a code official regarding the underlying substance of the condemnation and any danger posed to the public.

Although not in effect at the time LIP issued the demolition order, the Board argues that Section 1101.1 of the International Property Maintenance Code, 2009 Edition, published by the International Code Council, adopted as the Property Maintenance Code of the City (PMC) by Ordinance No. 37 of 2014, provides authority to demolish the Property:

> The code official shall order the owner of any premises upon which is located any structure, which in the code official judgment after review is so deteriorated or dilapidated or has become so out of repair as to be dangerous, unsafe, insanitary or otherwise unfit for human habitation or occupancy, and such that it is unreasonable to repair the structure, to demolish and remove such structure; or if such structure is capable of being made safe by repairs, to repair and make safe and sanitary, or to board up and hold for future repair or to demolish and remove at the owner's option; or when there has been cessation of normal construction of any structure for a period of more than two years, the code official shall order the owner to demolish and remove such structure, or board up until the owner's future repair. Boarding the building up for future

6

repair shall not extend beyond one year, unless approved
by the building official.

Section 1101.1 of the PMC.[1]  On its face, Section 1101.1 requires a determination by a code official that the danger posed by the structure is such that it is unreasonable to repair and, in the absence of such a determination, outlines steps that should be taken prior to demolition.  There is no evidence that LIP took intervening steps prior to condemning the Property such as issuing violation notices or fines and, beyond maintaining the exterior of the Property, there was no identification of the repairs necessary to lift the condemnation.  Following condemnation, there is no evidence that LIP made a determination regarding the danger posed by the Property or notified the Halperns of steps like those identified in Section 1101.1 of the PMC that they could take to prevent the house from being razed beyond simply requiring a certificate of occupancy.

Exercise of the police powers to demolish private property is subject to strict scrutiny.  The awesome exercise of this power should not be punitive; moreover, the remedy selected to abate the condition of the property should be the minimum necessary.  *City of Erie v. Stelmack*, 780 A.2d 824, 827 (Pa. Cmwlth. 2001).  Given the lack of evidence suggesting the Property is a danger to the public, the public interest is best served by maintaining the stay and ensuring that the merits of the Halperns' appeal are reviewed by a court of law applying the scrutiny required by the actions of LIP.  However, the procedural posture of this matter does not place the determination of whether the stay was appropriate in our jurisdiction. Accordingly, we quash the appeal as an impermissible appeal from an interlocutory

---

[1] In its decision, the Board does not refer to Section 1101.1 of the PMC; instead, the Board's decision focuses upon the criteria under the PMC to remove a condemnation and the Halperns' failure to take the steps necessary to lift the condemnation.

7

order and direct the Trial Court to issue a decision on the merits of the Halperns' appeal from the Board's decision.

_____
**JAMES GARDNER COLINS, Senior Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Samuel Halpern and Elinor Halpern, :
:
                   Appellants :
: No. 647 C.D. 2016
        v. :
:
Housing Appeals Review Board of the :
City of Scranton :

## O R D E R

AND NOW, this 21st day of December, 2017, per the attached opinion, the March 18, 2016 order issued by the Court of Common Pleas of Lackawanna County in the above-captioned matter is QUASHED.

_____
**JAMES GARDNER COLINS, Senior Judge**