IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In the Matter of Proceedings by the  :
Redevelopment Authority of the City  :
of Erie for the Condemnation of  :
Property Commonly Known As: 2708 :
Downing Avenue, Erie,  :
Pennsylvania  :
  :
Zac Associates, Owner(s) or  :
Reputed Owner(s)  :
  :  No. 1453 C.D. 2021
Appeal of: Zac Associates, LLC  :  Submitted: October 11, 2022

BEFORE:  HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT          FILED:  November 22, 2022

Zac Associates, LLC (Landowner) appeals an order of the Court of Common Pleas of Erie County (trial court) that overruled Landowner's preliminary objections to the declaration of taking filed by the Redevelopment Authority of the City of Erie (Redevelopment Authority). The Redevelopment Authority seeks to condemn Landowner's real property as blighted. Landowner asserts that the Redevelopment Authority did not serve the Notice of Blight upon Landowner and, further, acted in bad faith by pursuing a condemnation before it had formulated a plan for the property subject to the condemnation. For the reasons to follow, we affirm.

## Background

On March 20, 2017, the City of Erie's Blighted Property Review Committee issued a Notice of Blight for Landowner's property at 2708 Downing Avenue (Property), which identified the items that led to the determination of blight:

> 1. Violation Notice sent 11/28/07 & 7/13/16[;] 2. Premises remain vacant with repairs needed from fire in 2013[;] 3. Doors must be repaired or replaced[;] 4. Windows must be repaired or replaced[;] 5. Soffit & Fascia must be repaired[;] 6. Gutters & downspouts must be repaired or replaced[;] 7. Roof must be repaired[;] 8. Rear ramp must be repaired[;] 9. Garage must be demolished or repaired[;] 10. Junk & debris must be removed & property maintained[;] 11. Weeds must be cut & property maintained[;] 12. Taxes must be made current[;] 13. All utilities must be restored[; and] 14. **MUST PASS PROPERTY MAINTENANCE INSPECTION**.

Reproduced Record at 56a (R.R. __) (emphasis in original). That same day, the Notice of Blight was posted on the Property.

On June 14, 2021, the Redevelopment Authority approved a resolution to secure the Property through eminent domain and authorized its counsel to initiate eminent domain proceedings. *See* Declaration of Taking, Exhibit A; R.R. 10a-11a. Thereafter, on June 30, 2021, the Redevelopment Authority filed a Notice of Condemnation under Section 305 of the Eminent Domain Code, 26 Pa. C.S. §305, and a Declaration of Taking under the Urban Redevelopment Law.[1]

In response, Landowner filed preliminary objections to the Declaration of Taking, asserting that the Property was not blighted. Landowner challenged the Redevelopment Authority's power to condemn and the procedures it followed in its condemnation of the Property.

---

[1] Act of May 24, 1945, P.L. 991, *as amended*, 35 P.S. §§1701-1719.2.

On October 4, 2021, the trial court held an evidentiary hearing on Landowner's preliminary objections. At the hearing, Landowner, an LLC, presented documentary evidence and the testimony of its managing member, Donald Crenshaw. Crenshaw testified, *inter alia*, that there is an outstanding mortgage on the Property of $40,000. On April 13, 2016, Landowner received a letter from the Redevelopment Authority that it could be eligible to participate in the "Home Program," which provides "home ownership, rehabilitation, and [] training program[s] for [] minority youth in [the] community." Notes of Testimony, 10/4/2021, at 15-16, 19 (N.T. __); R.R. 77a-78a, 81a. After working "for about six years" to receive Home Program funds, Landowner learned on August 1, 2020, that funds from the program were available. N.T. 16; R.R. 78a. Home Program funds provide "a reimbursement or really a down payment assistance, that goes to the homebuyer so that the homebuyer can acquire the home[.]" N.T. 24-25; R.R. 86a-87a. However, Landowner still had to "borrow the money, or somehow get the money to fix up" the Property before its sale. N.T. 24; R.R. 86a. Crenshaw testified that Landowner was able to secure a line of credit from Erie Bank to make the repairs to the Property one week before the hearing and would be signing the documents on October 6, 2021. Crenshaw did not present any documents about this line of credit.

Regarding the Notice of Blight, Crenshaw testified that he did not see its posting on the Property in March of 2017 and did not recall receiving the Notice of Blight in the mail. Crenshaw stated that Landowner did not receive the Notice but confirmed that Landowner's business address is 1854 East 26th Street, Erie. Crenshaw testified that only in a meeting with Aaron Snippert, Executive Director of the Redevelopment Authority, did he learn that the Property had been declared "blighted." N.T. 18-19; R.R. 80a-81a.

Crenshaw testified that since 2017, Landowner has addressed some of the issues identified in the Notice of Blight, such as cleaning up garbage, replacing boards kicked down by kids, and paying the real estate taxes. Landowner has not done more repairs at the Property because the contract for the Home Program funds was not signed with the City of Erie until August of 2020 and with COVID-19, "there [was not] a whole lot happening." N.T. 23; R.R. 85a. On cross-examination, Crenshaw acknowledged that the Property was still vacant, the windows boarded, the soffits and fascia not repaired, and the gutters and downspouts not fixed, and there were no utility services to the Property.

On behalf of the Redevelopment Authority, its Executive Director, Aaron Snippert, testified. He stated that on March 20, 2017, the Notice of Blight was posted to the Property, and a copy was mailed to Landowner's address of record: 1854 East 26th Street, Erie. The Notice was not returned as undeliverable.

Snippert testified that in July of 2021, he spoke with Crenshaw about the condemnation. Snippert explained to Crenshaw that Landowner had to guarantee that the items identified in the Notice of Blight would be rectified in order to have the condemnation withdrawn. In his visit to the Property on July 6, 2021, Snippert found the windows and doors boarded up, siding missing, open windows and trash in the driveway. Also during the meeting with Crenshaw, Snippert informed Crenshaw that the Property had been certified in March of 2017 as blighted, and "the Redevelopment Authority had drafted a resolution in August of 2017 to follow through with eminent domain on the [P]roperty, but [he] had no documentation as to why that process stopped back in 2017, and that all [he] could assume . . . is that there was a conversation had with the [then-]Executive Director[,]" to which he was not privy. N.T. 33-34; R.R. 95a-96a.

4

On cross-examination, Snippert testified that he started working at the Redevelopment Authority in May of 2011 but had not been involved in issuing blight notices until December 1, 2020, when he became Executive Director. He testified that the Redevelopment Authority was aware of the mortgage on the Property. Snippert stated that although Crenshaw is a contractor, Crenshaw could not guarantee that Landowner will "do whatever needed to repair the [P]roperty." N.T. 39; R.R. 101a. Snippert told Crenshaw that the blight notice was issued in 2017 but "nothing has been done with the [P]roperty since." N.T. 39; R.R. 101a. Snippert testified that at their meeting in July of 2021, Crenshaw did not deny knowing that the Property had been declared blighted in 2017.

On November 23, 2021, the trial court overruled Landowner's preliminary objections. The trial court found that the determination of blight was made by the City's Blighted Property Review Committee on March 8, 2017. Crenshaw, on behalf of Landowner, testified that he never saw the Notice of Blight posted on the Property and that Landowner did not receive the notice in the mail. However, Snippert testified that the mailed notice was never returned, and the Redevelopment Authority presented photographs of the posting of the notice on the Property. Further, the Redevelopment Authority's records indicated that condemnation proceedings had been authorized but then stalled in the summer of 2017, which suggested that a conversation between the Redevelopment Authority and Landowner had taken place, which caused the condemnation to be arrested. The trial court found, based upon circumstantial evidence, that such a conversation did take place, which refuted Landowner's claim that it did not know about the Notice of Blight. The trial court found that Landowner had known for three years of the need to remediate the Property.

5

As to the blighted nature of the Property, Crenshaw admitted that it was vacant and garbage is often strewn on the premises, although he monitors the Property and removes any garbage as necessary. The trial court found that the Blighted Property Review Committee had a reasonable basis to make its determination of blight.

The trial court rejected Landowner's claim that the Redevelopment Authority had acted in bad faith by allowing Crenshaw to believe he could repair the Property and avoid condemnation. The trial court found these last-minute attempts were too little and too late. Landowner had over three years to correct the problems set forth in the Notice of Blight and did not do so.

## Appeal

On appeal,[2] Landowner raises two arguments. First, Landowner argues that the Redevelopment Authority did not have the power to condemn the Property because it did not properly serve the Notice of Blight upon Landowner. Second, Landowner argues that the Redevelopment Authority acted in bad faith by not doing a suitable investigation and not giving Landowner additional time to remediate the

---

[2] This Court's standard of review of a decision to condemn property and of the extent of the taking is to determine whether the trial court's decision evidences an abuse of discretion or an error of law. *Redevelopment Authority of City of York v. Bratic*, 45 A.3d 1168, 1173 (Pa. Cmwlth. 2012). The exercise of discretion over a determination that a property is blighted is solely within the power of the redevelopment authority, and this Court has explained:

> The only function of the courts in this matter is to see that the Authority has not acted in bad faith; to see that the Authority has not acted arbitrarily; to see that the Authority has followed the statutory procedures in making its determination; and finally, to see that the actions of the Authority do not violate any of our constitutional safeguards . . . . An authority's exercise of its discretion should not be disturbed "in the absence of fraud or palpable bad faith."

*Id*. (quoting *In re Condemnation of Urban Redevelopment Authority of Pittsburgh*, 822 A.2d 135, 138 (Pa. Cmwlth. 2003)) (internal citations omitted).

6

Property upon learning that Landowner had secured the financing needed to make the necessary repairs.

## I. Redevelopment Procedures for Blight

Section 12.1 of the Urban Redevelopment Law,[3] 35 P.S. §1712.1, governs the condemnation of individually blighted properties, regardless of their location. Individual property condemnations must follow certain procedures, which include: a review by a blighted property review committee; the committee's certification to the planning commission that the property is blighted; service of a notice of blight determination upon the property owner; notice to the property owner of the opportunity to correct the conditions; and notice that failure to correct the blight conditions may subject the property to condemnation. Acquisition and disposition of an individual blighted property does not require the approval of a redevelopment area plan or redevelopment proposal. 35 P.S. §1712.1(f).[4] Rather, at least 30 days prior to acquisition of an individually blighted property,

> the Redevelopment Authority shall transmit identification of the property to the planning commission of the municipality and shall request a recommendation as to the appropriate reuse of the property. The Redevelopment Authority shall not acquire the property where the planning commission certifies that disposition for residential or related use would not be in accord with the comprehensive plan of the municipality.

*Id*. In this matter, Landowner's Property was 1 of 18 individual properties declared blighted, which the Redevelopment Authority sought to acquire by eminent domain.

---

[3] Added by the Act of June 23, 1978, P.L. 556.

[4] It states, in pertinent part: "Acquisition and disposition of blighted property under this section shall not require preparation, adoption or approval of a redevelopment area plan or redevelopment proposal as set forth in section 10[.]" 35 P.S. §1712.1(f).

Landowner argues that the Redevelopment Authority did not aver in either the Declaration of Taking or Notice of Condemnation that Landowner had been served with "notice of the determination that the property is blighted, together with an appropriate order to eliminate the conditions causing the blight and notification that failure to do so may render the property subject to condemnation under this act," as required by Section 12.1(e)(2) of the Urban Redevelopment Law, 35 P.S. §1712.1(e)(2). Further, Landowner contends it was not served with the Notice of Blight.

We begin with service. Section 12.1(e)(2) of the Urban Redevelopment Law states as follows:

> No property shall be certified to the Redevelopment Authority unless the owner of the property or an agent designated by him for receipt of service of notices within the municipality has been served with notice of the determination that the property is blighted, together with an appropriate order to eliminate the conditions causing the blight and notification that failure to do so may render the property subject to condemnation under this act. *The notice shall be served upon the owner or his agent in accord with the provisions of a local ordinance pertaining to service of notice of determination of a public nuisance*. The owner or his agent shall have the right of appeal from the determination in the same manner as an appeal from the determination of public nuisance.

35 P.S. §1712.1(e)(2) (emphasis added). Here, neither party identified a local ordinance pertaining to service of a notice of determination of a public nuisance.

However, the Notice of Blight referred to the need to pass a City maintenance inspection, and a property's violation of the City's Property Maintenance Code can cause that property to be declared a public nuisance. *See*

8

*City of Erie v. Stelmack*, 780 A.2d 824 (Pa. Cmwlth. 2001).[5]  That ordinance requires structures and vacant land to "be maintained in a clean, safe, secure and sanitary condition as provided herein so as not to cause a blighting problem or adversely affect the public health or safety."  PROPERTY MAINTENANCE CODE OF THE CITY OF ERIE (Property Maintenance Code), §301.3 (2015) (emphasis in original).[6]  The Property Maintenance Code also sets forth the method for service of a notice of violation.  It states:

> Such notice shall be deemed to be properly served if a copy thereof is:
> 1. Delivered personally;
> 2. *Sent by* certified or *first-class mail addressed to the last known address*; or
> 3. If the notice is returned showing that the letter was not delivered, a copy thereof *shall be posted* in a conspicuous place in or about the structure affected by such notice.

PROPERTY MAINTENANCE CODE, §107.3 (emphasis added).

Here, the Redevelopment Authority presented testimonial and documentary evidence to show that the Notice of Blight, with the list of items to be remediated, was posted on the Property on March 20, 2017.  A photo of the Notice

---

[5] In that case, a four-unit residential building became vacant and utility service to the property ended in 1996.  In 1996, the city notified the landowner about needed window repairs and cutting of weeds.  Thereafter, the city posted a repair or demolish order on the property, specifying numerous violations of the city's Property Maintenance Code and giving the landowner 30 days to make repairs.  The city posted an order to demolish and remove a public nuisance.  The trial court held a public nuisance hearing, at which the city's code enforcement officer testified about the numerous violations of the Property Maintenance Code.  The trial court declared the building a public nuisance and ordered the city to demolish it, and this Court affirmed.  *City of Erie*, 780 A.2d at 826, 828.

[6] The City of Erie has adopted the 2015 International Property Maintenance Code. https://cityof.erie.pa.us/government/departments/code-enforcement/ (last visited November 22, 2022).

9

of Blight posted on the Property was entered into evidence. Snippert testified that the Notice of Blight was sent by first-class mail to Landowner's business address, 1854 East 26th Street in Erie, and not returned as undeliverable. This mailing to Landowner's business address comports with the service requirements of Section 107.3 of the Property Maintenance Code.

There was also evidence that Landowner knew of the Notice of Blight. Records of the Redevelopment Authority indicated that condemnation proceedings were stalled in the summer of 2017, and Snippert testified that this pause in the condemnation process suggested that the Redevelopment Authority had conferred with Crenshaw about the Property's blight. Additionally, Snippert testified that in their July 2021 meeting Crenshaw did not state that he had not received the Notice of Blight in 2017.

Further, on August 24, 2018, the Redevelopment Authority provided Landowner actual notice[7] of the blight with a letter that notified Landowner of the possibility of condemnation because of the Property's blight. Any omission in 2017 was remedied by the Redevelopment Authority's 2018 letter. At the hearing, Crenshaw testified, "What I recall, that I actually received, was that it was part of blight and that they were looking to take the property as a blighted piece of property." N.T. 18-19; R.R. 80a-81a. The trial court found that Crenshaw's testimony was consistent with the contents of the August 2018 letter to Landowner. Trial Court PA. R.A.P. 1925(a) Op. at 4-5.

---

[7] "[A]ctual notice is such notice as is positively proved to have been given to a party directly and personally, or such as he is presumed to have received personally because the evidence within his knowledge was sufficient to put him upon inquiry." *In re Consolidated Reports and Return by Tax Claims Bureau of Northumberland County of Properties*, 132 A.3d 637, 647 (Pa. Cmwlth. 2016).

10

Finally, contrary to Landowner's argument, there is no requirement under the Eminent Domain Code or the Urban Redevelopment Law that the Redevelopment Authority must aver in the Declaration of Taking that the owner of the condemned property had been served with a notice of blight. In sum, the evidence supports the trial court's finding that Landowner was served with the Notice of Blight issued in 2017 and had actual notice by at least 2018. Trial Court PA. R.A.P. 1925(a) Op. at 4.

## II. Bad Faith Condemnation

Landowner argues that the Redevelopment Authority did not make an intelligent and informed judgment on the condemnation of the Property because it had no plans for the Property after its condemnation. Further, the Redevelopment Authority did not know that the Property was encumbered by a mortgage with Northwest Bank. For these reasons, Landowner argues that the Redevelopment Authority acted in bad faith.

The Redevelopment Authority responds that it was aware of the mortgage and notified the lienholder of the condemnation action. In any case, a lien against the Property relates to damages, but that is a separate part of the condemnation proceeding.

When the certification of blight is challenged by preliminary objections, the burden of proving bad faith is on the landowner; it is a heavy one. *Redevelopment Authority of City of Scranton v. Kameroski*, 616 A.2d 1102, 1105 (Pa. Cmwlth. 1992). The redevelopment authority is presumed to have acted in good faith in making such a determination. *Simco Stores v. Redevelopment Authority of City of Philadelphia*, 317 A.2d 610, 613 (Pa. 1974). "Bad faith must be described by clear averments of fact in the pleadings and proved by clear, precise and

11

indubitable evidence." *In re Condemnation by Redevelopment Authority of City of Lancaster of Real Estate in City of Lancaster*, 682 A.2d 1369, 1372 (Pa. Cmwlth. 1996). Bad faith is not shown by bald assertions. *Id.*

Landowner asserted that the Redevelopment Authority "failed to do a suitable investigation leading to an intelligent, informed judgment by the [Redevelopment Authority]." Preliminary Objections at 3, ¶12; R.R. 33a. Specifically, Landowner alleged that the Redevelopment Authority had not "formulated definitive plans [on] use to be made of the Property; no specifications have yet been formulated; no estimate of construction/repair is yet available; no final development, architectural, or engineering plan has been completed; and no other relevant due diligence measures have been completed." *Id.*

The trial court explained, in a detailed and thorough opinion, that Landowner did not overcome the presumption that the Redevelopment Authority acted in good faith. The Urban Redevelopment Law authorizes a redevelopment authority to condemn properties within a redevelopment area[8] or to condemn individual properties as blighted in accordance with Section 12.1. The Property was

---

[8] Section 9(i) of the Urban Redevelopment Law conveys the power of eminent domain to condemn property within a redevelopment area, and it states, in pertinent part:

> An Authority shall constitute a public body, corporate and politic, exercising public powers of the Commonwealth as an agency thereof, which powers shall include all powers necessary or appropriate to carry out and effectuate the purposes and provisions of this act, including the following powers in addition to those herein otherwise granted:
>
> * * * *
>
> (i) To acquire by eminent domain any real property, including improvements and fixtures for the public purposes set forth in this act, in the manner hereinafter provided, except real property located outside a redevelopment area[.]

35 P.S. §1709(i).

12

not part of a redevelopment area; rather, it was designated as blighted pursuant to Section 12.1 of the Urban Redevelopment Law. Under Section 12.1(f), the Redevelopment Authority was not required to prepare a redevelopment proposal. 35 P.S. §1712.1(f).[9] *See also In re Condemnation by Redevelopment Authority of Lawrence County*, 962 A.2d 1257, 1262 (Pa. Cmwlth. 2008) ("Acquisition of blighted property under Section 12.1 does not require the adoption of a redevelopment plan as set forth in Section 10 [of the Urban Redevelopment Law, 35 P.S. §1710].").  In short, the Redevelopment Authority did not need to provide a site plan, estimates to prepare the area for redevelopment, or a redevelopment contract with a redeveloper, as Landowner argued.  Bald assertions of bad faith do not suffice. *Redevelopment Authority of City of Lancaster*, 682 A.2d at 1372.

As to the Redevelopment Authority's so-called ignorance of the mortgage on the Property, the trial court accepted Snippert's testimony that the Redevelopment Authority not only knew of the mortgage, but also notified the lender of the condemnation action.  The certificate of service attached to the Notice of Condemnation shows service on Northwest Bank.

Landowner is incorrect that a Declaration of Taking must be filed within one year of the issuance of the Notice of the Blight.  The Eminent Domain Code states:

> (e) Filing.--The condemnor shall *file within one year of the action authorizing the declaration of taking a declaration of taking* covering all properties included in the authorization not otherwise acquired by the condemnor within this time.

26 Pa. C.S. §302(e).  Here, the Redevelopment Authority approved the initiation of eminent domain proceedings against the Property on June 14, 2021, and it filed the

---

[9] *See supra* at 7, note 4.

Declaration of Taking on June 30, 2021. Thus, the Declaration of Taking was filed less than a year from the action authorizing the declaration.

Finally, the Redevelopment Authority was under no obligation to abandon its condemnation action or to "provide owners of blighted properties an opportunity to remediate." *Redevelopment Authority of City of York*, 45 A.3d at 1174. Landowner had more than three years to make the necessary repairs to the Property, but Landowner did not eliminate the conditions causing the blight determination. The Redevelopment Authority did not abuse its discretion or act in bad faith by not allowing Landowner more time to correct the problems at the Property that triggered the Notice of Blight.

## Conclusion

For the foregoing reasons, we conclude that the evidence supports the trial court's finding that Landowner was served with the Notice of Blight. Further, Landowner did not establish that the Redevelopment Authority acted in bad faith. Accordingly, the trial court's order overruling Landowner's preliminary objections is affirmed.

_____
MARY HANNAH LEAVITT, President Judge Emerita

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In the Matter of Proceedings by the :
Redevelopment Authority of the City :
of Erie for the Condemnation of :
Property Commonly Known As: 2708 :
Downing Avenue, Erie, :
Pennsylvania :
                          :
Zac Associates, Owner(s) or :
Reputed Owner(s) :
                          :
Appeal of: Zac Associates, LLC : No. 1453 C.D. 2021

## ORDER

        AND NOW this 22nd day of November, 2022, the order of the Court of Common Pleas of Erie County, dated November 23, 2021, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita